**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

JUSTIN TYLER O'QUINN,                          )
                                               )
            **Plaintiff,**             )
                                               )
v.                                            )     **Case No. 23-3117-TC-BGS**
                                             )
JOEL HRABE, *et al.*,                 )
                                             )
           **Defendants.**            )

**DEFENDANT'S MOTION TO DISMISS,**
**OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT**

Defendant Joel Hrabe submits this memorandum, through Assistant Attorney General Matthew L. Shoger, in support of his motion under Fed. R. Civ. P. 12(b)(1) and (b)(6) or Fed. R. Civ. P. 56. Hrabe respectfully requests that this motion be granted and this action be dismissed or, in the alternative, summary judgment be granted in his favor. Hrabe attaches five new exhibits, outlined in the table below, and states the following in support.

**INDEX OF EXHIBITS**

| Exhibit | Description |
|---------|-------------|
| A | KASPER Information Sheet |
| B | Selected State Court Documents from Sedgwick County case 2022-CR-001985 |
| C | Declaration of Michelle Sullivan |
| D | Declaration of Mark Keating |

**NATURE OF THE CASE**

Plaintiff Justin Tyler O'Quinn, alleges that the Kansas Department of Corrections improperly calculated his sentences of incarceration by applying jail time credit to the wrong sentence, resulting in him allegedly being wrongfully incarcerated past his latest possible release date.

O'Quinn filed this lawsuit on May 4, 2023. (Doc. 1.) A *Martinez* Report was filed

November 9, 2023 (Doc. 19), and O'Quinn filed a response to it on December 4, 2023 (Doc. 21). On screening under the Prison Litigation Reform Act (PLRA), the Court dismissed defendants Governor Laura Kelly and Attorney General Derek Schmidt on January 25, 2024. (Doc. 22 at 2.) Only claims against former Norton Correctional Facility Warden Joel Hrabe remain. (Doc. 22 at 2-3.)

O'Quinn alleges that his rights under the Fifth, Eighth, and Ninth Amendments were violated, including cruel and unusual punishment, and he also alleges "wrongful incarceration." (Doc. 1 at 4-5.) Because O'Quinn does not specify the legal basis for his "wrongful incarceration" claim, Hrabe addresses it in this motion as if it might bring claims under federal statutes (28 U.S.C. §§ 1495, 2513), state statutes (K.S.A. 60-5004), and state common-law false imprisonment. O'Quinn seeks $5 million dollars in compensation from Hrabe. (Doc. 1 at 6.)

Although Kansas courts ordered KDOC to change how it calculated O'Quinn's sentences (after he had been released from custody), the calculation change would not have altered O'Quinn's release date. (Exhibit C; Exhibit D.) Additionally, Hrabe was not part of KDOC's Sentence Computation Unit, the unit tasked with sentence computations. (*See* Exhibit C at ¶ 1-3.)

The Court should dismiss O'Quinn's claims against Hrabe for lack of subject-matter jurisdiction due to Eleventh Amendment immunity and lack of constitutional standing. Alternatively, the Court should dismiss O'Quinn's claims against Hrabe for failure to state a claim due to the applicable statutes of limitations, lack of personal participation, lack of the requisite federal criminal penalty for a unjust-imprisonment claim under federal statutes, lack of the requisite reversal of a conviction and the requisite innocence for a wrongful-imprisonment claim under Kansas statutes, failure to specify any rights under the Ninth-Amendment, failure to allege any action by the federal government under the Fifth Amendment, and failure to exhaust

administrative remedies. Alternatively, the Court should grant summary judgment to Hrabe because the sentence re-calculation would not have affected O'Quinn's release date and because Hrabe was not deliberately indifferent to O'Quinn's liberty interests. The Court should decline to exercise supplemental jurisdiction over remaining state-law claims given the absence of a sufficient federal claim.

### STATEMENT OF MATERIAL FACTS AS TO WHICH
### NO GENUINE ISSUE EXISTS

1. The Kansas Department of Corrections (KDOC) has a Sentence Computation Unit (KDOC-SCU) that ensures that sentences imposed by the state District Courts are computed in accordance with all applicable statutes and Kansas Administrative Regulations. (Exhibit C at ¶¶ 1-3.)

2. The Kansas Prisoner Review Board (KPRB) is part of KDOC. Its duties include deliberating on and issuing orders to grant, revoke, or establish conditions for parole, conditional release, and post-release supervision, and sending reports and recommendations to the governor regarding applications for clemency. (Exhibit D at ¶¶ 2-3.)

3. On June 26, 2015, O'Quinn satisfied the prison portion of the sentence imposed in Sedgwick County case 11-CR-2794 and was released to serve a lifetime period of post-incarceration supervision. (Exhibit C at ¶ 5; Doc. 19-1 at 10; Exhibit A at 4.)

4. On February 8, 2017, O'Quinn was returned to a KDOC facility as a violator with a new sentence (Sedgwick County case 16-CR-194, a 24-month determinate sentence imposed on February 1, 2017). (Exhibit C at ¶ 6; *see also* Doc. 19-1 at 12-15.)

5. On March 21, 2017, the Kansas Prisoner Review Board (KPRB) revoked O'Quinn's post-release supervision in case 11-CR-2794, and he was remanded back to the custody

of a KDOC facility. The KPRB passed him to a new parole-eligibility hearing date of April 2018 under K.S.A. 75-5217(c). (Exhibit C at ¶ 7; Exhibit D at ¶ 5; Doc. 19-1 at 19-20.)

6.  O'Quinn was held in the Sedgwick County Jail on a KDOC warrant following his sentencing for case 16-CR-194 on February 1, 2017, until his transport to a KDOC facility on that KDOC warrant on February 8, 2017. He remained held in custody on the KDOC warrant at either the Sedgwick County Jail or a KDOC facility for the 48 days between his sentencing for case 16-CR-194 on February 1, 2017, and the revocation of his post-release supervision for case 11-CR-2794 on March 21, 2017 (hereinafter the "48-day period"). (Exhibit C at ¶ 8; Exhibit D at ¶ 6.)

7.  The KPRB's decision on March 21, 2017 regarding the revocation of O'Quinn's post-release supervision for case 11-CR-2794 was, "Parole or Post Release Revoked. Pass to April 2018." O'Quinn remained incarcerated in a KDOC facility until he met with the KPRB for his next parole hearing on March 6, 2018. (Exhibit D at ¶ 7; Doc. 19-1 at 19-20.)

8.  When setting the timeframe for that parole hearing, the KPRB was aware of and took into consideration the 365 days of jail time credit that KDOC had applied at that time to case 11-CR-2794. (Exhibit D at ¶ 8.)

9.  The 365 days of jail time credit were based on the time O'Quinn spent in jail between his arrest on February 2, 2016, for violating his post-release supervision for 11-CR-2794 and his sentencing for case 16-CR-194 on February 1, 2017. (Exhibit D at ¶ 9.)

10. The journal entry of judgement filed February 3, 2017, for case 16-CR-194 reflected incarceration credit of 365 days and included the following language: "From 02/02/16-

02/01/17 defendant was held on 16CR194 and KDOC warrant. If defendant has received credit for these dates in 11CR2794 then he is not eligible for duplicate credit for these dates in 16CR194." (Exhibit C at ¶ 12; Doc. 19-1 at 25-26.)

11. Following the direction of the court in reference to duplicate credit, no incarceration credit was applied to O'Quinn's 24-month sentence, as the time in question had been credited towards 11-CR-2794. (Exhibit C at ¶ 13.)

12. When setting the timeframe for the parole hearing, the KPRB was also aware of and took into consideration the 48-day period, which KDOC had applied at that time to case l 1-CR-2794. (Exhibit D at ¶ 10.)

13. In accordance with 22-3716(c)(5) and the district court's sentencing order, the period of incarceration for case 16-CR-194 ran consecutively to the period of incarceration for case 11-CR-2794. (Exhibit C at ¶ 9; Doc. 19-1 at 14, 25.)

14. On March 6, 2018, the KPRB rendered the decision of "Parole Granted to determinate sentence on or after October 1, 2018," allowing O'Quinn to begin to serve the determinate sentence for case 16-CR-194 on or after October 1, 2018. (Exhibit D at ¶ 11; Exhibit C at ¶ 10; Doc. 19-1 at 21.)

15. As part of that parole decision, the KPRB was aware of and took into consideration the 365 days of jail time credit that KDOC had applied at that time to case l 1-CR-2794. (Exhibit D at ¶ 12.)

16. As part of that parole decision, the KPRB was also aware of and took into consideration the 48-day period, which KDOC had applied at that time to case 11-CR-2794. (Exhibit D at ¶ 13.)

17. The grant of parole ended the period of incarceration for case 11-CR-2794, with the

portion of O'Quinn's sentence in that case requiring Lifetime Post-Release Supervision still remaining to be served. (*See* Exhibit D at ¶ 14.)

18. On the effective parole date of October 1, 2018, O'Quinn's 24-month determinate sentence under 2016-CR-194 was computed. (Exhibit C at ¶ 11.)

19. The sentence begins date for 2016-CR-194 was established as October 1, 2018. (Exhibit C at ¶ 14; *see also* Exhibit C at ¶¶ 12-13.)

20. Factoring in both good time earned and/or withheld; and program credit earned, while serving the 24-month sentence, O'Quinn's release date was March 10, 2020. On that date, O'Quinn was returned to post-incarceration supervision. (Exhibit C at ¶ 15; Doc. 19-1 at 40, 47; Exhibit A at 4.)

21. On November 30, 2020, on remand from the Kansas Court of Appeals, the Norton County District Court ordered KDOC to set aside any jail time credit credited towards O'Quinn's sentence in case 11-CR-2794, and to apply it instead to O'Quinn's sentence in case 16-CR-194. (Exhibit C at ¶ 16; Doc. 19-1 at 39.)

22. According to the Kansas Court of Appeal's reasoning, KDOC also needed to take into account the 48-day period. According to the Kansas Court of Appeal's reasoning, these 48 days were also served on case 16-CR-194. (Exhibit C at ¶ 17; *see also Quinn v. State*, 473 P.3d 385 (table opinion), 2020 WL 6108419, at *2 (Kan. Ct. App. Oct. 16, 2020).

23. As O'Quinn had already served the prison portion of the sentence associated with 2016-CR-194 and was in the community on supervision, no action was taken by the KDOC or KPRB as there was no longer a sentence to apply the credit towards. (Exhibit C at ¶ 18.)

24. If O'Quinn had not already satisfied the prison portion of the sentence imposed in 16-CR-194, and the KDOC had applied the credit towards said sentence, O'Quinn's March 6,

2018, KPRB decision granting parole on or after October 1, 2018, would have been rescinded, and a new decision would have been issued granting parole on or after November 18, 2019, in reference to and in accordance with K.A.R. 44-6-134 (Jail Time Credit) to ensure that duplicate credit was not awarded. (Exhibit C at ¶ 19.)

25. On November 18, 2019, O'Quinn's determinate sentence would have been computed by subtracting from November 18, 2019, the awarded 365 days of jail credit, along with the time served during the 48-day period, resulting in a sentence begins date of October 1, 2018. (Exhibit C at ¶ 20.)

26. The period of time that good time was awarded would not have changed as the sentence begins date remained October 1, 2018. The award period for good time begins with the sentence begins date and ends four months prior to an individual's earliest release date. In O'Quinn's case the good time award period was/would have been October 1, 2018 to February 13, 2020 regardless of where the credit was applied. (Exhibit C at ¶ 21 (first).)

27. Accordingly, there would have been no change in the release dates associated with the 2016-CR-194 sentence. (Exhibit C at ¶ 21 (second).)

## QUESTIONS PRESENTED

I.    Does the Eleventh Amendment bar O'Quinn's federal claims against Hrabe in his official capacity?

II.   Does O'Quinn lack constitutional standing to pursue a claim against Hrabe when he does not allege causation of any injuries by Hrabe?

III.  Is Hrabe entitled to dismissal of O'Quinn's § 1983 claims and any false-imprisonment claim when they are untimely and barred by the applicable statutes of limitations?

IV.     Is Hrabe entitled to dismissal of claims against him when O'Quinn does not allege that Hrabe personally participated in any alleged injury?

V.      Should any unjust-imprisonment claim under 28 U.S.C. §§ 1495 and 2513 be dismissed when no federal criminal penalty has been alleged?

VI.     Should any wrongful-imprisonment claim under K.S.A. 60-5004 be dismissed when O'Quinn's conviction has not been reversed or vacated and when O'Quinn has not alleged actual innocence?

VII.    Should O'Quinn's Ninth-Amendment claim be dismissed when O'Quinn has not specified any rights under the Ninth Amendment that have allegedly been violated?

VIII.   Should O'Quinn's Fifth-Amendment claims be dismissed when O'Quinn has not alleged any action by the federal government?

IX.     Is Hrabe entitled to dismissal when O'Quinn failed to exhaust his administrative remedies under the Prison Litigation Reform Act (PLRA)?

X.      Does O'Quinn fail to establish an Eighth-Amendment claim when he was not detained beyond the termination of his sentence and when Hrabe was not deliberately indifferent toward O'Quinn's liberty interests?

XI.     Does O'Quinn fail to establish a Fourteenth-Amendment due-process claim when he was not detained beyond the termination of his sentence and when Hrabe was not deliberately indifferent toward O'Quinn's liberty interests?

XII.    Is Hrabe entitled to qualified immunity when his actions – either as alleged or as revealed in the evidentiary record – did not violate clearly established law of which reasonable state officials would have known?

XIII.   Should the Court decline to exercise supplemental jurisdiction over remaining state-

law claims given the absence of a sufficient federal claim?

## ARGUMENTS AND AUTHORITIES

### *Standard on Motion to Dismiss for Lack of Subject-Matter Jurisdiction*

Under Federal Rule of Civil Procedure 12(b)(1), a defendant may move to dismiss claims for lack of subject-matter jurisdiction. "Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute." *Kline v. Biles*, 861 F.3d 1177, 1180 (10th Cir. 2017) (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)). O'Quinn, as the party invoking the Court's jurisdiction, bears the burden of showing its existence. *Id.* "A court lacking jurisdiction cannot render judgment but must dismiss the cause at any stage of the proceedings in which it becomes apparent that jurisdiction is lacking." *Siloam Springs Hotel, L.L.C. v. Century Sur. Co.*, 906 F.3d 926, 931 (10th Cir. 2018). A federal court must generally "satisfy itself of its jurisdiction over the subject matter before it considers the merits of a case." *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 583 (1999).

A motion to dismiss for lack of subject-matter jurisdiction under Rule 12(b)(1) can take the form of either a facial attack, looking only to the factual allegations of the complaint, or a factual attack, presenting evidence to challenge the court's jurisdiction. *Muscogee (Creek) Nation v. Okla. Tax Comm'n*, 611 F.3d 1222, 1227 n.1 (10th Cir. 2010). For a facial attack, the same standards apply to the motion as are applicable to a Rule 12(b)(6) motion to dismiss for failure to state a cause of action. *Id.*; *see also Garling v. EPA*, 849 F.3d 1289, 1293 & n.3 (10th Cir. 2017) ("the trial court must apply a standard patterned on Rule 12(b)(6)"). To the extent a factual attack is made, the Court is not required to assume the truth of the complaint's factual allegations for purposes of resolving the jurisdictional issue, but "may consider materials outside the complaint to resolve disputed jurisdictional facts." *Williams v. United States*, 780 F. App'x

657, 660 (10th Cir. 2019); *see also Baker v. USD 229 Blue Valley*, 979 F.3d 866, 872 (10th Cir. 2020) (saying that resolving disputed jurisdictional facts only converts the motion to a summary judgment motion if "resolution of the jurisdictional question is intertwined with the merits").

### Standard on Motion to Dismiss for Failure to State a Claim

On a Rule 12(b)(6) motion to dismiss – or a facial attack under 12(b)(1), as mentioned above – a court must accept as true all well-pleaded factual allegations in the complaint, *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009), but a complaint must also contain enough facts to state a claim for relief that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Brownback v. King*, 592 U.S. 209, 217 (2021) ("a plaintiff must plausibly allege all jurisdictional elements"). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Garling*, 849 F.3d at 1293 & n.3 (applying *Twombly* and *Iqbal* to a facial attack on subject-matter jurisdiction under Rule 12(b)(1)).

The court need not accept as true those allegations that state only legal conclusions. *Iqbal*, 556 U.S. at 678. Under this standard, a plaintiff's claim must cross the line from "conceivable to plausible," and "the mere metaphysical possibility that some plaintiff could prove some set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for these claims." *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (emphasis omitted).

Although the sufficiency of a complaint generally rests on its contents alone, the court may also consider: (1) documents that the complaint incorporates by reference, (2) documents

that the complaint references if they are central to the plaintiff's claims, and (3) matters of which a court may take judicial notice, which includes court records in any related court proceedings. *Gee v. Pacheco*, 627 F.3d 1178, 1186, 1191 (10th Cir. 2010). At the motion to dismiss stage, documents of which the court takes judicial notice "may only be considered to show their contents, not to prove the truth of matters asserted therein." *Tal v. Hogan*, 453 F.3d 1244, 1264 n.24 (10th Cir. 2006).

Although courts have traditionally construed *pro se* pleadings in a liberal fashion, this "does not relieve the plaintiff of the burden of alleging sufficient facts on which a recognized legal claim could be based." *Riddle v. Mondragon*, 83 F.3d 1197, 1202 (10th Cir. 1996). Similarly, courts do not assume the role of an advocate for the *pro se* litigant by constructing arguments or searching the record for potentially viable theories. *Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005). A *pro se* litigant is expected to construct his or her own arguments or theories and adhere to the same rules of procedure that govern any other litigant in this circuit. *Id.* at 840-41.

### Summary Judgment Standard

Summary judgment is appropriate when there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. *McCoy v. Meyers*, 887 F.3d 1034, 1044 (10th Cir. 2018). The court views the evidence and draws all reasonable inferences in a light most favorable to the nonmoving party. *Id.* "[W]hile courts must construe pro se pleadings liberally, pro se plaintiffs may not rely on conclusory allegations to overcome their burden." *Hastings v. Campbell*, 47 F. App'x 559, 560 (10th Cir. 2002) (citing *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991)). Facts must be shown through affidavits, deposition transcripts, or incorporated exhibits. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998).

> [T]he mere existence of a scintilla of evidence in support of the nonmovant's position is insufficient to create a genuine issue or dispute of material fact. [citation omitted] To create a genuine issue, the nonmovant must present facts upon which a reasonable jury could find in favor of the nonmovant.

*Sinclair Wyo. Refin. Co. v. A & B Builders, Ltd.*, 989 F.3d 747, 765 (10th Cir. 2021).

### *Qualified Immunity Standard*

Qualified immunity protects from civil liability government officials whose actions do not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Thomas v. Kaven*, 765 F.3d 1183, 1194 (10th Cir. 2014). When a defendant raises the qualified immunity defense, it creates a presumption that the defendant is immune from suit. *Janny v. Gamez*, 8 F.4th 883, 913 (10th Cir. 2021). To overcome this presumption, the burden shifts to the plaintiff to show (1) the defendant's alleged conduct violated a federal statutory or constitutional right, and (2) that right was clearly established at the time of the alleged violation. *Id.* "The court has discretion to decide which of the two prongs of the qualified-immunity analysis to address first." *Grissom v. Roberts*, 902 F.3d 1162, 1167 (10th Cir. 2018) (citing *Pearson v. Callahan*, 555 U.S. 223, 236 (2009)). The clearly-established right must be clear from applicable case law, *Colbruno v. Kessler*, 928 F.3d 1155, 1161 (10th Cir. 2019), and must be defined with specificity, *City of Escondido v. Emmons*, 586 U.S. 38, 42 (2019).

## I.   <u>The Eleventh Amendment bars O'Quinn's federal claims against Hrabe in his official capacity.</u>

"The Eleventh Amendment bars suits in federal court against a nonconsenting state brought by the state's own citizens." *Williams v. Utah Dep't of Corr.*, 928 F.3d 1209, 1212 (10th Cir. 2019) (citing *Edelman v. Jordan*, 415 U.S. 651, 662-63 (1974)). State officials such as KDOC employees share the state's immunity from suits against them in their official capacities. *See id.; White v. Colorado*, 82 F.3d 364, 366 (10th Cir. 1996). A narrow exception allows a

plaintiff to seek prospective relief against a state official for ongoing violations of federal law. *Muscogee (Creek) Nation v. Pruitt*, 669 F.3d 1159, 1166 (10th Cir. 2012) (citing *Verizon Md. Inc. v. Pub. Serv. Comm'n*, 535 U.S. 635, 645 (2002)). But claims for "retrospective declaratory relief" are barred. *Meiners v. Univ. of Kan.*, 359 F.3d 1222, 1232 (10th Cir. 2004). "Once effectively asserted, Eleventh Amendment immunity constitutes a bar to the exercise of federal subject matter jurisdiction." *Williams*, 928 F.3d at 1212.

Here, O'Quinn requests only monetary damages in the form of compensatory damages (Doc. 1 at 6), which are barred by the Eleventh Amendment as asserted against Hrabe in his official capacity. O'Quinn does not request prospective relief. Therefore, O'Quinn's federal claims against Hrabe in his official capacity should be dismissed for lack of subject-matter jurisdiction due to Eleventh Amendment immunity.

## II.   O'Quinn fails to establish constitutional standing for his claims against Hrabe due to lack of causation.

To establish federal subject-matter jurisdiction, plaintiffs must show that they have standing. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 102 (1998). The "irreducible constitutional minimum of standing" contains a triad of requirements: injury in fact, causation, and redressability. *Id*. at 102-03. This triad "constitutes the core of Article III's case-or-controversy requirement, and the party invoking federal jurisdiction bears the burden of establishing its existence." *Id.* at 103-04. For the second prong, causation, "there must be . . . a fairly traceable connection between the plaintiff's injury and the complained-of conduct of the defendant." *Id*. at 103. Aside from the complaint naming Hrabe in the caption (Doc. 1 at 1) and describing him as the acting warden of Norton Correctional Facility (Doc. 1 at 3), Hrabe is not mentioned anywhere else in the complaint. O'Quinn does not complain of any conduct by Hrabe, much less conduct that could be fairly traced and connected to O'Quinn's injuries. Therefore,

O'Quinn lacks constitutional standing to bring any claims against Hrabe because he has not plausibly alleged causation by Hrabe.

## III.   O'Quinn's § 1983 claims and any false-imprisonment claims are untimely and barred by the applicable statutes of limitations.

"[A]lthough a statute of limitations bar is an affirmative defense, it may be resolved on a Rule 12(b)(6) motion to dismiss when the dates given in the complaint make clear that the right sued upon has been extinguished." *Radloff-Francis v. Wyo. Med. Ctr., Inc.*, 524 F. App'x 411, 413 (10th Cir. 2013) (citing *Aldrich v. McCulloch Props., Inc.*, 627 F.2d 1036, 1041 n.4 (10th Cir. 1980)). The plaintiff then "has the burden of establishing a factual basis for tolling the statute." *Aldrich*, 627 F.2d at 1041 n.4.

Here, O'Quinn asserts that he was held in prison longer than he should have been. His complaint refers to being in KDOC custody from 2017 to at least 2019. (Doc. 1 at 2.) The court can take judicial notice of the location history for O'Quinn in the Kansas Adult Supervised Population Electronic Repository (KASPER) report contained in Exhibit A. *United States v. Basher*, 629 F.3d 1161, 1165 & n.2 (9th Cir. 2011) (citing *Demis v. Sniezek*, 558 F.3d 508, 513 n.2 (6th Cir. 2009) and *United States v. Montgomery*, 550 F.3d 1229, 1231 n.1 (10th Cir. 2008)); *see also Gee v. Pacheco*, 627 F.3d 1178, 1186 (10th Cir. 2010) (holding the court can properly consider under Rule 12(b)(6) "matters of which a court may take judicial notice"). According to that location history, O'Quinn was released from KDOC custody on March 10, 2020, for "In-State Post Release." (Exhibit A at 4.[1])

The Kansas Court of Appeals ruled on October 16, 2020, that O'Quinn's jail time credit

---

[1] If the Court does not address this issue under Rule 12(b)(6), but rather considers this issue on Hrabe's alternative motion for summary judgment under Rule 56, the Court can also consider the following documents that further demonstrate this: Exhibit C at ¶ 15; Doc. 19-1 at 40, 47.

should be applied differently. *O'Quinn v. State*, 473 P.3d 385 (table opinion), 2020 WL 6108419, at *4 (Kan. Ct. App. Oct. 16, 2020); *see also Gee*, 627 F.3d at 1191 (saying the court can take judicial notice of court records in any related court proceedings). Following that decision, the state district court issued an order on November 30, 2020 for KDOC to apply O'Quinn's jail time credit in accordance with the Kansas Court of Appeal's decision. (Doc. 19-1 at 39); *see also Gee*, 627 F.3d at 1191. O'Quinn's complaint was filed on May 4, 2023. (Doc. 1.)

### A. O'Quinn's § 1983 claims are untimely under the applicable two-year statute of limitations.

For § 1983 claims, the forum state's statute of limitations for personal injury actions applies. *Jenkins v. Chance*, 762 F. App'x 450, 454 (10th Cir. 2019) (citing *Owens v. Okure*, 488 U.S. 235, 240-41 (1989)). If the forum state has multiple statutes of limitations for personal injury actions, the general or residual statute of limitations for personal injury actions applies. *Id.* (citing *Owens*, 488 U.S. at 249-50). In Kansas, the two-year statute of limitations under K.S.A. 60-513(a)(4) applies to § 1983 claims. *M.A.C. v. Gildner*, 853 F. App'x 207, 209 (10th Cir. 2021) (citing *Hamilton v. City of Overland Park*, 730 F.2d 613, 614 (10th Cir. 1984)). Accrual of the federal action – and thus when the limitations period begins to run – is controlled by federal law. *Mondragón v. Thompson*, 519 F.3d 1078, 1082 (10th Cir. 2008). Accrual occurs upon knowledge (or constructive knowledge) of the injury. *Price v. Philpot*, 420 F.3d 1158, 1162 (10th Cir. 2005).

Here, O'Quinn brings § 1983 claims, so the two-year statute of limitations from K.S.A. 60-513(a)(4) applies. Although O'Quinn does not mention when or how Hrabe was involved in his alleged injuries, O'Quinn would have had knowledge or constructive knowledge of his injuries from the Kansas court decisions on October 16, 2020, and November 30, 2020, which directed KDOC to apply his jail time credit differently. So the latest the § 1983 claims would

have accrued is November 30, 2020. Over two years passed from that date before O'Quinn filed his complaint on May 4, 2023. Therefore, unless the statute of limitations was sufficiently tolled, O'Quinn's § 1983 claims are barred by the applicable two-year statute of limitations.

**B. Any false-imprisonment claim is untimely under the applicable one-year statute of limitations.**

Under Kansas law, a one-year statute of limitations applies to false-imprisonment claims under K.S.A. 60-514(b). The statute of limitations for false imprisonment begins to run when the tortious conduct ends. *See EEOC v. Mico Oil Co.*, No. 87-2471-0, 1988 WL 139481, at *3 (D. Kan. Dec. 27, 1988). This statute of limitations "does not contain a discovery rule, and there is no authority that a cause of action governed by [the] statute does not accrue until discovered." *Cooper v. Home Depot*, No. 11-1006, 2011 WL 2470357, at *5 (D. Kan. June 20, 2011); *see also Kelly v. VinZant*, 287 Kan. 509, 528 (2008) (holding that a claim for battery, which is also governed by K.S.A. 60-514(b), accrues at the time of a touching even if fraud used to induce consent was not immediately discovered because "[t]he legislature has not provided an exception to or stated any circumstances extending the statute of limitations for battery based upon concealment of fraud or an inability to discover the battery").

Here, O'Quinn brings a "wrongful incarceration" claim. If this is interpreted as a false-imprisonment claim, the one-year statute of limitations from K.S.A. 60-514(b) applies. Although O'Quinn does not mention when or how Hrabe was involved in his alleged injuries, the latest day O'Quinn could have been falsely imprisoned would have been the day he was released from custody, which occurred on March 10, 2020. So that date would be when Hrabe, if involved, would have ended his tortious conduct. *See Mico Oil*, 1988 WL 139481, at *3. Over three years passed from date before O'Quinn filed his complaint on May 4, 2023. Therefore, unless the statute of limitations was sufficiently tolled, any state-law false-imprisonment claims are barred

by the applicable statute of limitations.

**C.  O'Quinn has not alleged a valid basis to toll sufficiently the statutes of limitations.**

O'Quinn has not asserted any basis for tolling the statute of limitations. Even if the court considers any tolling due to the COVID-19 pandemic, any such tolling would be insufficient to make this action timely. The Kansas Supreme Court issued administrative orders during the COVID-19 pandemic under authority granted by K.S.A. 20-172 that tolled limitations periods and statutory deadlines between March 19, 2020 and April 15, 2021. *Centrinex, LLC v. Darkstar Group, LTC*, No. 12-2300-EFM, 2022 WL 16833759, at *4 (D. Kan. Nov. 9, 2022). As stated above, the latest the § 1983 claims would have accrued is November 30, 2020. Because this was during the period of tolling for COVID-19, the two-year statute of limitations for the § 1983 claims would not have begun to run until April 15, 2021, when the period of tolling for COVID-19 ended. The statute of limitations would have finished running for the § 1983 claims on April 15, 2023. O'Quinn filed his complaint after that date, on May 4, 2023.

And, as stated above, the latest a state-law false-imprisonment claim would have accrued is March 10, 2020. The one-year statute of limitations for the false-imprisonment claim would have begun to run on that day. Between then and March 19, 2020, when the tolling period for COVID-19 began, nine days would have passed. Then the statute of limitations would have resumed April 15, 2021. The statute of limitations would have finished running for the state-law false-imprisonment claim on April 6, 2022. O'Quinn filed his complaint over a year after this date, on May 4, 2023.

Therefore, even considering any tolling due to the COVID-19 pandemic, O'Quinn's § 1983 claims and any false-imprisonment claims are untimely and barred by the applicable statutes of limitations.

**IV.   Hrabe is entitled to dismissal of O'Quinn's § 1983 claims because O'Quinn fails to state the requisite personal participation of Hrabe.**

"Liability under § 1983 requires personal participation in the unlawful acts." *Beedle v. Wilson*, 422 F.3d 1059, 1072 (10th Cir. 2005). "Section 1983 does not authorize liability under a theory of respondeat superior." *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 767 (10th Cir. 2013). Rather, a plaintiff must show an "affirmative link" between a defendant's actions and their alleged constitutional injury. *Id.* To establish the affirmative link, a plaintiff must show: (1) personal involvement; (2) sufficient causal connection; and (3) culpable state of mind. *Id.*

Here, Hrabe cannot be liable under O'Quinn's claims because he was not personally involved in O'Quinn's injury. Aside from the complaint naming Hrabe in the caption (Doc. 1 at 1) and describing him as the acting warden of Norton Correctional Facility (Doc. 1 at 3), Hrabe is not mentioned anywhere else in the complaint. O'Quinn does not allege that Hrabe acted at all, much less acted in a way that made him personally involved in O'Quinn's injury, in a way that made him cause O'Quinn's injury, or with a culpable state of mind. Therefore, the claims against Hrabe should be dismissed because O'Quinn fails to state a claim against Hrabe due to lack of personal participation in O'Quinn's injury.

**V.   Hrabe is entitled to dismissal of any unjust-imprisonment claim under 28 U.S.C. §§ 1495 and 2513 because it only applies to federal criminal penalties.**

Because O'Quinn does not specify the legal basis for his "wrongful incarceration" claim, Hrabe addresses it in this motion as if it might bring claims under federal statutes (28 U.S.C. §§ 1495, 2513), state statutes (K.S.A. 60-5004), and state common-law false imprisonment. 28 U.S.C. § 1495 reads as follows:

> The United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim for damages by any person unjustly convicted of an

offense against the United States and imprisoned.

This statute has a companion statute, 28 U.S.C. § 2513, which applies only to claims "under section 1495." 28 U.S.C. § 2513. As stated in § 1495, these statutes apply only to persons "convicted of an offense against the United States and imprisoned." That means these statutes only apply to imprisonment based on *federal* criminal offenses. *See Taylor v. Colburn*, No. 23-3155-JWL, 2023 WL 8697812, at *3 n.1 (D. Kan. Dec. 15, 2023) (holding that these federal statutes do not apply to claims based on "state court criminal proceedings").

Here, if O'Quinn's "wrongful incarceration" claim is interpreted as a claim under 28 U.S.C. §§ 1495 and 2513, then it fails to state a claim because O'Quinn does not allege that he was imprisoned under a federal criminal offense. Therefore, Hrabe is entitled to dismissal of any unjust-imprisonment claim under 28 U.S.C. §§ 1495 and 2513 for failure to state a claim.

## VI.   Hrabe is entitled to dismissal of any wrongful-imprisonment claim under K.S.A. 60-5004 because it only applies when a conviction is reversed or vacated and it requires actual innocence.

Because O'Quinn does not specify the legal basis for his "wrongful incarceration" claim, Hrabe addresses it in this motion as if it might bring claims under federal statutes (28 U.S.C. §§ 1495, 2513), state statutes (K.S.A. 60-5004), and state common-law false imprisonment. To bring a claim for wrongful imprisonment under K.S.A. 60-5004, a claimant must be "a person convicted and subsequently imprisoned for one or more crimes that such person did not commit." K.S.A. 60-5004(a). The claim has the following additional elements:

(A) The claimant was convicted of a felony crime and subsequently imprisoned;

(B) the claimant's judgment of conviction was reversed or vacated and either the charges were dismissed or on retrial the claimant was found to be not guilty;

(C) the claimant did not commit the crime or crimes for which the claimant was convicted and was not an accessory or accomplice to the acts that were the basis of the conviction and resulted in a reversal or vacation of the judgment of

conviction, dismissal of the charges or finding of not guilty on retrial; and

(D) the claimant did not commit or suborn perjury, fabricate evidence, or by the claimant's own conduct cause or bring about the conviction. Neither a confession nor admission later found to be false or a guilty plea shall constitute committing or suborning perjury, fabricating evidence or causing or bringing about the conviction under this subsection.

K.S.A. 60-5004(c)(1).

Here, O'Quinn does not allege element B because he does not allege that his judgment of conviction was reversed or vacated. Not only was his *conviction* not altered, his *sentence* was not even altered. The court only ordered a change to how his *sentence* was *calculated*. He also fails to allege the second part of element B, that the charges against him were dismissed or that on retrial he was found to be not guilty. *See In re Sims*, 542 P.3d 1, 5-6, Syl. ¶¶ 1-2 (Kan. 2024) (interpreting element B).

Additionally, O'Quinn does not qualify as a "claimant" to bring a claim under the statute because he does not allege that he did not commit the crimes for which he was convicted. K.S.A. 60-5004(a); *see also Hall v. Dahl*, No. 21-3086-SAC, 2021 WL 3144644, at *2 n.1 (citing K.S.A. 60-5004(a)) (saying that a claim is not brought under K.S.A. 60-5004 unless the plaintiff alleges a wrongful conviction because they did not commit the crimes). This also means O'Quinn does not allege the first part of element C. Further, under the second part of element C, actual innocence must be the grounds that "resulted in a reversal or vacation of the judgment of conviction, dismissal of the charges or finding of not guilty on retrial." Therefore, because O'Quinn does not qualify as a claimant and because he cannot meet the elements of the claim, any wrongful-imprisonment claim under K.S.A. 60-5004 should be dismissed for failure to state a claim.

**VII.**     **Hrabe is entitled to dismissal of O'Quinn's Ninth-Amendment claim because O'Quinn's complaint does specify any rights under the Ninth Amendment that were allegedly violated.**

The Ninth Amendment to the U.S. Constitution states, "The enumeration in the Constitution, of certain rights, shall not be construed to deny or disparage others retained by the people." But "the Ninth Amendment is not an independent source of individual rights; rather, it provides a rule of construction that [courts] apply in certain cases." *Holmes v. Town of Silver City*, 826 F. App'x 678, 681 (10th Cir. 2020) (quoting *Jenkins v. Comm'r*, 483 F.3d 90, 92 (2d Cir. 2007)); *see also Zhao v. United States*, 91 Fed. Cl. 95, 99 n.4 (2010) (collecting cases and saying "the Ninth Amendment has not been judged to be a source of individual rights for purposes of stating a claim"). So a plaintiff "cannot pursue a claim for an alleged violation of the Ninth Amendment in a suit under § 1983." *Holmes*, 826 F. App'x at 682. It would be especially inappropriate to apply the Ninth Amendment to rights protected by other amendments, such as the Eighth Amendment's protection against mistreatment of prisoners, because "the Ninth Amendment only protects those rights not otherwise 'enumerat[ed] in the Constitution.'" *Parnisi v. Colo. State Hosp.*, 992 F.2d 1223 (table opinion), 1993 WL 118860, at *1 (10th Cir. Apr. 15, 1993) (alteration in original) (quoting U.S. Const. amend. IX). And dismissal of Ninth Amendment claims can also be further appropriate when they are "vague and conclusory." *Boling v. Romer*, 101 F.3d 1336, 1340 (10th Cir. 1996).

Here, O'Quinn does not specify any rights under the Ninth Amendment that were allegedly violated, and he only mentions the Ninth Amendment alongside the Fifth and Eighth amendments. (*See* Doc. 1 at 4.) So not only can O'Quinn not "pursue a claim for an alleged violation of the Ninth Amendment in a suit under § 1983" in general, *see Holmes*, 826 F. App'x at 682, but his claim is also vague and conclusory and is attempting to inappropriately apply the

Ninth Amendment to rights protected by other amendments, such as the Eighth Amendment's

protection against mistreatment of prisoners and the Fifth Amendment's protection of due

process. Therefore, Hrabe is entitled to dismissal of O'Quinn's Ninth-Amendment claim for

failure to state a claim.

**VIII.** <u>**Hrabe is entitled to dismissal of O'Quinn's Fifth-Amendment claim because the**</u>
<u>**Fifth Amendment applies only to action by the federal government.**</u>

"The Fifth Amendment applies 'only to action by the federal government.'" *Gorenc v.*

*Klaassen*, 421 F. Supp. 3d 1131, 1148 n.9 (D. Kan. 2019) (quoting *Koessel v. Sublette Cnty.*

*Sheriff's Dep't*, 717 F.3d 736, 748 n.2 (10th Cir. 2013)). "Moreover, because § 1983 imposes

liability only for actions taken under state law, even if there were a federal actor involved there

would be no Fifth Amendment claim under § 1983." *Koessel*, 717 F.3d at 748 n.2. Here,

O'Quinn does not allege any actions by the federal government, so the Fifth Amendment does

not apply. O'Quinn also does not specify any rights under the Fifth Amendment that were

allegedly violated. Therefore, Hrabe is entitled to dismissal of O'Quinn's Fifth-Amendment

claim for failure to state a claim.

**IX.** <u>**Hrabe is entitled to dismissal of O'Quinn's § 1983 claims because O'Quinn failed to**</u>
<u>**exhaust his administrative remedies under the PLRA.**</u>

The Prison Litigation Reform Act (PLRA) requires an inmate to exhaust all available

administrative remedies before bringing a § 1983 claim about prison conditions. 42 U.S.C. §

1997e(a); *Porter v. Nussle*, 534 U.S. 516, 520 (2002). "The Tenth Circuit has held that the time

frame for determining whether a plaintiff is required to exhaust his administrative remedies

under the PLRA is whether the plaintiff was incarcerated at the time he filed suit." *Watson v.*

*Evans*, No. 13-3035-EFM, 2014 WL 7246800, at *4 (D. Kan. Dec. 17, 2014) (citing *Norton v.*

*City of Martietta*, 432 F.3d 1145, 1150 (10th Cir. 2005)).

Here, the complaint says plainly that at the time of filing the complaint, O'Quinn "presently resides at Sedgwick County Detention Facility." (Doc. 1 at 1.) The court can take judicial notice under Federal Rule of Evidence 201(b)(2) that plaintiff's address listed on the complaint, which is also the return address on the envelope, 141 W. Elm, Wichita, KS 67203 (Doc. 1 at 1; Doc. 1-2.), is the address of the Sedgwick County Detention Facility.[2] The court can take judicial notice of the state court records attached as Exhibit B, which come from a related court proceeding, case number 2022-CR-001985. *See Gee v. Pacheco*, 627 F.3d 1178, 1186, 1191 (10th Cir. 2010). The court can also take judicial notice of the location history for O'Quinn in the Kansas Adult Supervised Population Electronic Repository (KASPER) report contained in Exhibit A. *United States v. Basher*, 629 F.3d 1161, 1165 & n.2 (9th Cir. 2011) (citing *Demis v. Sniezek*, 558 F.3d 508, 513 n.2 (6th Cir. 2009) and *United States v. Montgomery*, 550 F.3d 1229, 1231 n.1 (10th Cir. 2008)).

O'Quinn pled guilty to an offender registration violation (a felony) on March 3, 2023 (Exhibit B at 1), and he was sentenced on May 3, 2023, to incarceration for 28 months (Exhibit B at 2, 5). He continued to be detained at Sedgwick County Detention Facility while he awaited transportation to a KDOC facility, which occurred on May 31, 2023. (Exhibit B at 7-8; Exhibit A at 3.) Therefore, on or around May 4, 2023, at the time the complaint was filed, O'Quinn fit the PLRA's definition of "prisoner," which includes "any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations

---

[2] *Deffendall v. Stinson*, No. 21-cv-14201, 2023 WL 8170937, at *5 n.7 (S.D. Fla. Nov. 24, 2023) (citing Fed. R. Evid. 201(b)(2)); *see also Spivey v. Schiofman*, No. 4:22-CV-00018, 2022 WL 2541133, at *2 n.5 (N.D. Fla. Apr. 18, 2022); *Darowski v. Wojewoda*, No. 3:15-cv-00803, 2016 WL 4179840, at *8 n.3 (D. Conn. Aug. 7, 2016); *Jefferson v. Grondolsky*, No. 12-10030, 2013 WL 791855, at *2 n.2 (D. Mass. Mar. 1, 2013); *Valle v. 850 Bryant St. CJ2 7th Floor Med./Mental Health*, No. C 07-1333, 2007 WL 1690358, at *2 (N.D. Cal. June 11, 2007).

of criminal law." 42 U.S.C. 1997e(h). So the PLRA's exhaustion requirement applies to O'Quinn's complaint.

"There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." *Jones v. Bock*, 549 U.S. 199, 211 (2007). "[T]he PLRA exhaustion requirement requires proper exhaustion." *Woodford v. Ngo*, 548 U.S. 81, 93 (2006). "An inmate properly exhausts a claim by utilizing each step the prison holds out for resolving the claim internally and by abiding 'with an agency's deadlines and other critical procedural rules.'" *Gray v. Sorrels*, 818 F. App'x 787, 789 (10th Cir. 2020) (quoting *Woodford*, 548 U.S. at 90). "In other words, a prisoner must comply with procedural 'rules that are defined not by the PLRA, but by the prison grievance process itself.'" *Williams v. Hill*, 422 F. App'x 682, 684 (10th Cir. 2011) (quoting *Bock*, 549 U.S. at 218).

In a suit governed by the PLRA, failure to exhaust is an affirmative defense, and the defendant has the burden of proof regarding exhaustion of administrative remedies. *Roberts v. Barreras*, 484 F.3d 1236, 1240-41 (10th Cir. 2007). But failure to exhaust can support a 12(b)(6) dismissal when clear from the face of the complaint. *Markovich v. Correct Care Sols.*, 406 F. App'x 264, 265 (10th Cir. 2010) (citing *Aquilar-Avellaveda v. Terrell*, 478 F.3d 1223, 1225 (10th Cir. 2007)).

The KDOC Grievance Procedure for Inmates is set forth in K.A.R. § 44-15-101 *et seq.*, and applies "to a broad range of matters that directly affect the inmate, including . . . [c]omplaints by inmates regarding policies and conditions within the jurisdiction of the facility or the department of corrections; and . . . actions by employees and inmates, and incidents occurring within the facility." K.A.R. § 44-15-101a(d)(1). Here, this regulation applies to O'Quinn's § 1983 claim because his Complaint involves the alleged actions of a KDOC

employee. *See Lindsey v. Cook*, No. 19-3094-HLT, 2021 WL 483855, at *2 (D. Kan. Feb. 4, 2021).

An inmate must take four steps to complete the grievance process: (1) attempt an informal resolution with unit team members; (2) submit a grievance to an appropriate unit team member; (3) submit a grievance to the warden of the facility; and (4) appeal to the secretary of corrections. *Lindsey*, 2021 WL 483855, at *2; K.A.R. §§ 44-15-101(b), (d), 44-15-102(a)-(c).

Here, O'Quinn admits to not exhausting administrative remedies in the complaint. (Doc. 1 at 6.) Therefore, it is clear from the face of the complaint that O'Quinn failed to exhaust his administrative remedies regarding the allegations in his lawsuit. This Court should grant summary judgment to Hrabe on the § 1983 claims due to failure to exhaust administrative remedies.

### X.   The Court should decline to exercise supplemental jurisdiction over remaining state-law claims given the absence of a sufficient federal claim.

"When all federal claims have been dismissed, the court may, and usually should, decline to exercise jurisdiction over any remaining state claims." *Koch v. City of Del City*, 660 F.3d 1228, 1248 (10th Cir. 2011). Here, all federal claims should be dismissed for the reasons outlined above, and the court should decline to exercise jurisdiction over any remaining state claims.

### XI.   Alternatively, the Court should grant summary judgment to Hrabe because the record conclusively shows that the sentence re-calculation did not affect his release date.

In the alternative, summary judgment is appropriate because the sentence re-calculation did not affect O'Quinn's release date. (Defendants' Statement of Facts (DSF) ¶ 27; *see also* DSF ¶¶ 1-26; Doc. 19 at ¶ 12.) That is, no injury occurred. The lack of an injury in fact implicates standing, but, because "resolution of the jurisdictional question is intertwined with the merits,"

Hrabe addresses the matter on the merits in his alternative motion for summary judgment. *See Baker v. USD 229 Blue Valley*, 979 F.3d 866, 872 (10th Cir. 2020); 5B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1350 (4th ed., Feb. 2024 update) ("if a factual attack implicates an element of the claim, the court should find that jurisdiction exists and treat the objection as a direct attack on the merits of the plaintiff's case").[3] However, the jurisdictional question does not entirely disappear. *See Brownback v. King*, 592 U.S. 209, 217-18 (2021) (holding that when a jurisdictional question is intertwined with the merits with regard to an element of a claim, failure to state a claim with regard to that element also deprives the court of subject-matter jurisdiction). The question of constitutional standing should still guide the Court's analysis of what would constitute an injury sufficient to establish a violation of O'Quinn's federal rights. To have standing, O'Quinn must allege and ultimately prove a harm suffered by him that is concrete and actual or imminent, not conjectural or hypothetical." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 103 (1998). Although establishing a claim under § 1983 may require more than that, it constitutionally cannot require less.

O'Quinn alleged in his Complaint that he was "held captive beyond [his] latest possible release date" (Doc. 1 at 5), but the evidentiary record conclusively shows that to be incorrect. At most, what occurred was mere administrative mislabeling of time spent in incarceration as being under one sentence rather than under another. While O'Quinn may not like mislabeling, it does not constitute an injury to his rights under the Constitution. At the very least, qualified immunity applies because it was not clearly established that such administrative mislabeling constituted a

---

[3] *See also Ward-Richardson v. FCA US LLC*, No. 2:21-CV-235, 2023 WL 5767481, at *2 (N.D. Ga. Sept. 6, 2023) (saying factual attacks on jurisdiction under Rule 12(b)(1) "challenge jurisdiction based on surrounding circumstances").

violation of O'Quinn's constitutional rights.

**A. O'Quinn's Eighth-Amendment claim fails because he was not detained beyond the termination of his sentence and because Hrabe was not deliberately indifferent to O'Quinn's liberty interests.**

"Imprisonment beyond one's term can constitute cruel and unusual punishment for purposes of the Eighth Amendment." *Mitchell v. N.M. Dep't of Corr.*, 996 F.2d 311 (table opinion), 1993 WL 191810, at *3 (10th Cir. June 1, 1993) (citing *Sample v. Diecks*, 885 F.2d 1099, 1108-10 (3d Cir. 1989)). "Detention beyond the termination of a sentence could constitute cruel and unusual punishment if it is the result of 'deliberate indifference' to the prisoner's liberty interest." *Haygood v. Younger*, 769 F.2d 1350, 1354 (9th Cir. 1985) (cited approvingly by *Mitchell*, 1993 WL 191810, at *3). The *Sample* court laid out a three-element test, requiring a plaintiff to demonstrate: (1) that the official had knowledge of the particular prisoner's problem and thus of the risk of unwarranted detention; (2) that the official either failed to act or took only ineffectual action under circumstances indicating that the official's response to the problem was a product of deliberate indifference to the prisoner's plight; and (3) a causal connection between the official's response to the problem and the infliction of the unjustified detention. *Sample*, 885 F.2d at 1110. Regarding the second element, the *Sample* court elaborated:

> Among the circumstances relevant to a determination of whether the requisite attitude was present are the scope of the official's duties and the role he or she has played in the everyday life of the prison. Obviously, not every official who is aware of a problem exhibits indifference by failing to resolve it. **A warden, for example, although he may have ultimate responsibility for seeing that prisoners are released when their sentences are served, does not exhibit deliberate indifference by failing to address a sentence calculation problem brought to his attention when there are procedures in place calling for others to pursue the matter.** On the other hand, if a prison official knows that, given his or her job description or the role he or she has assumed in the administration of the prison, a sentence calculation problem will not likely be resolved unless he or she addresses it or refers it to others, it is far more likely that the requisite attitude will be present.

*Sample*, 885 F.2d at 1110 (emphasis added).

Here, the undisputed facts conclusively show that O'Quinn was not imprisoned beyond his term, so no unjustified detention occurred. Additionally, O'Quinn has not alleged or provided any evidence that Hrabe knew about the problem, that Hrabe failed to act due to deliberate indifference, or that any deliberate indifference by Hrabe caused any unjustified detention. Even if the matter had been brought to Hrabe's attention, he would not have exhibited deliberate indifference by failing to address it when other personnel were in charge of sentence calculations. (*See* DSF ¶ 1.) Therefore, Hrabe is entitled to summary judgment on O'Quinn's Eighth Amendment claim.

**B.  Any Fourteenth-Amendment claim fails because he was not detained beyond the termination of his sentence and because Hrabe was not deliberately indifferent to O'Quinn's liberty interests.**

O'Quinn may have been trying to make a due-process claim by citing the Fifth Amendment. If so, a due-process claim regarding state-government actions would be under the Fourteenth Amendment. *Koessel v. Sublette Cnty. Sheriff's Dep't*, 717 F.3d 736, 748 n.2 (10th Cir. 2013). When a sentence expires, the state loses its power to hold an inmate, and the inmate's continued detention can implicate the due process clause of the Fourteenth Amendment. *See McNeil v. Director*, 407 U.S. 245, 246 (1972); *see also Jones v. City of Jackson*, 203 F.3d 875, 880-81 (5th Cir. 2000); *Shorts v. Bartholomew*, 255 F. App'x 46, 51 (6th Cir. 2007); *Martinez v. Santiago*, 51 F.4th 258, 262 (7th Cir. 2022); *Scott v. Baldwin*, 720 F.3d 1034, 1036 (8th Cir. 2013); *Haygood v. Younger*, 769 F.2d 1350, 1355-58 (9th Cir. 1985); *Cannon v. Macon Cnty.*, 1 F.3d 1558, 1562-63 (11th Cir. 1993).

But "the Due Process Clause is simply not implicated by a *negligent* act of an official causing unintended loss of or injury to life, liberty, or property." *Daniels v. Williams*, 474 U.S.

327, 328 (1986) (emphasis in original). The appropriate state-of-mind standard to apply to a continued-detention claim under a due-process theory is "deliberate indifference." *Cannon*, 1 F.3d at 1563 (11th Cir.); *Shorts*, 255 F. App'x at 53 (6th Cir.); *Martinez*, 51 F.4th at 262 (7th Cir.); *Scott*, 720 F.3d at 1036 (8th Cir.). Therefore, the same standard applies under the Fourteenth Amendment as under the Eighth Amendment. So Hrabe is entitled to summary judgment on O'Quinn's Fourteenth-Amendment claim for the same reasons as pertain to O'Quinn's Eighth-Amendment claim.

### C. The Court should grant summary judgment to Hrabe on any false-imprisonment claim due to lack of "unlawful physical restraint."

A false-imprisonment claim requires showing an "unlawful physical restraint by one of another's liberty, whether in prison or elsewhere." *Brown v. State*, 261 Kan. 6, 9 (1996). "In a civil action for false imprisonment, the plaintiff must show that the defendant restrained his or her personal freedom *without legal excuse* by words, acts, threats, or personal violence which caused the plaintiff to be fearful of leaving." *Miles v. State*, 519 P.3d 803 (table opinion), 2022 WL 16842853, at *2 (Kan. Ct. App. Nov. 10, 2022) (emphasis added) (citing *Thompson v. Gen. Fin. Co.*, 205 Kan. 76, 88 (1970)). Here, the undisputed facts show that KDOC's physical restraint of O'Quinn was lawful. O'Quinn was not held past his release date. The changes in sentence calculations did not alter O'Quinn's release date, so KDOC was not "without legal excuse." In fact, due to O'Quinn's multiple sentences, KDOC had multiple legal excuses for him being incarcerated that simply applied at different times. The question in the Kansas court case was whether KDOC applied the correct sentence – that is, the correct legal excuse – to certain periods of time spent in jail or in the custody of KDOC. If KDOC applied the wrong legal excuse to certain periods of time, that does not mean that KDOC was without legal excuse but rather that the other legal excuse applied to those periods of time. Therefore, because the undisputed

facts show that KDOC exercised lawful physical restraint of Baskin's liberty with sufficient legal excuse to do so, Hrabe is entitled to summary judgment on any false-imprisonment claim.

**D. The Court should decline to exercise supplemental jurisdiction over remaining state-law claims given the absence of a sufficient federal claim.**

"When all federal claims have been dismissed, the court may, and usually should, decline to exercise jurisdiction over any remaining state claims." *Koch v. City of Del City*, 660 F.3d 1228, 1248 (10th Cir. 2011). Here, all federal claims should be dismissed or resolved on summary judgment for the reasons outlined above, and the court should decline to exercise jurisdiction over any remaining state claims.

## CONCLUSION

For these reasons, Hrabe requests that the Court dismiss O'Quinn's claims against him or grant summary judgment to him. This Court lacks subject-matter jurisdiction over O'Quinn's claims against Hrabe due to Eleventh Amendment immunity and lack of constitutional standing. Alternatively, O'Quinn fails to state a claim against Hrabe due to the applicable statutes of limitations, lack of personal participation, lack of the requisite federal criminal penalty for a unjust-imprisonment claim under federal statutes, lack of the requisite reversal of a conviction and the requisite innocence for a wrongful-imprisonment claim under Kansas statutes, failure to specify any rights under the Ninth-Amendment, failure to allege any action by the federal government under the Fifth Amendment, and failure to exhaust administrative remedies. Alternatively, the undisputed facts show that O'Quinn fails to establish claims against Hrabe because the sentence re-calculation would not have affected O'Quinn's release date and because Hrabe was not deliberately indifferent to O'Quinn's liberty interests. The Court should decline to exercise supplemental jurisdiction over remaining state-law claims given the absence of a sufficient federal claim.

Respectfully submitted,

KRIS W. KOBACH
ATTORNEY GENERAL OF KANSAS

*/s/ Matthew L. Shoger*
Matthew L. Shoger, KS No. 28151
Assistant Attorney General
Office of the Attorney General
120 SW 10th Avenue, 2nd Floor
Topeka, Kansas 66612-1597
matt.shoger@ag.ks.gov
785-296-2215
Fax: (785) 291-3767
*Attorney for Defendant*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 22nd day of April, 2024, the foregoing document was filed with the clerk of the court by using the CM/ECF system, which will send notice of electronic filing to the following:

Natasha Carter
Kansas Department of Corrections
714 SW Jackson, Suite 300
Topeka, KS 66603
Natasha.Carter@ks.gov
*Attorney for Kansas Department of Corrections, Interested Party*

Robert E. Wasinger
Kansas Department of Corrections - Ellsworth
P.O. Box 107
Ellsworth, KS 67439
Bob.Wasinger@ks.gov
*Attorney for Kansas Department of Corrections, Interested Party*

I also certify that a copy of the above will be served on April 23, 2024, by means of first-class mail, postage prepaid, addressed to:

Justin Tyler O'Quinn, #104815
Winfield Correctional Facility
1806 Pinecrest Circle
Winfield, KS 67156
*Plaintiff, pro se*

*/s/ Matthew L. Shoger*
Matthew L. Shoger
Assistant Attorney General