## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

JUSTIN TYLER O'QUINN, )
)
      Plaintiff, )
)
v. )     Case No. 23-3117-TC-BGS
)
JOEL HRABE, *et al.*, )
)
      Defendants. )
)

## DEFENDANTS' MOTION TO DISMISS

Defendants Joel Hrabe, Michelle Sullivan, and Mark Keating ("Defendants") submit this memorandum, through Assistant Attorney General Matthew L. Shoger, in support of their motion under Fed. R. Civ. P. 12(b)(1) and (b)(6). Defendants respectfully request that this motion be granted and this action be dismissed. Defendants attach one exhibit – Exhibit A (KASPER Information Sheet) – and state the following in support.

## NATURE OF THE CASE

Plaintiff Justin Tyler O'Quinn alleges that the Kansas Department of Corrections improperly calculated his sentences of incarceration by applying jail time credit to the wrong sentence, resulting in him allegedly being wrongfully incarcerated after he should have been released. (Doc. 46 at 2, 4-5; *see also* Doc. 1 at 4-5.)

O'Quinn filed this suit on May 4, 2023. (Doc. 1.) A *Martinez* Report was filed November 9, 2023 (Doc. 19), and O'Quinn filed his response on December 4, 2023 (Doc. 21). On screening under the Prison Litigation Reform Act (PLRA), the Court dismissed defendants Governor Laura Kelly and Attorney General Derek Schmidt on January 25, 2024. (Doc. 22 at 2.) At that point, only claims against former Norton Correctional Facility warden Joel Hrabe remained. (Doc. 22 at 2-3.) Then O'Quinn filed an Amended Complaint ("Complaint") on June 4, 2024, which

added Michelle Sullivan and Mark Keating as defendants. (Doc. 46 at 2-3.)

O'Quinn alleges that his rights under the Eighth and Fourteenth Amendments were violated, including due to cruel and unusual punishment, and he also alleges "wrongful incarceration." (Doc. 46 at 4-5.) Because O'Quinn does not specify the legal basis for his "wrongful incarceration" claim, Defendants address it in this motion as if it might bring claims under federal statutes (28 U.S.C. §§ 1495, 2513), state statutes (K.S.A. 60-5004), and state common-law false imprisonment. O'Quinn seeks $15 million dollars in compensation from Defendants along with nominal damages. (Doc. 46 at 6.)

The Court should dismiss O'Quinn's official-capacity claims for lack of subject-matter jurisdiction due to Eleventh Amendment immunity. The Court should dismiss his federal compensatory-damages claims for failure to state a claim due to failure to allege a physical injury. The Court should dismiss the remaining claims for failure to state a claim due to the applicable statutes of limitations, lack of personal participation, qualified immunity, lack of the requisite federal criminal penalty for an unjust-imprisonment claim under federal statutes, and lack of the requisite reversal of a conviction and factual innocence for a wrongful-imprisonment claim under Kansas statutes. Lastly, the Court should decline to exercise supplemental jurisdiction over any remaining state-law claims given the absence of a sufficient federal claim.

## ARGUMENTS AND AUTHORITIES

### *Standard on Motion to Dismiss for Lack of Subject-Matter Jurisdiction*

Under Federal Rule of Civil Procedure 12(b)(1), a defendant may move to dismiss claims for lack of subject-matter jurisdiction. O'Quinn, as the party invoking the Court's jurisdiction, bears the burden of showing its existence. *Kline v. Biles*, 861 F.3d 1177, 1180 (10th Cir. 2017) (citing *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)). "A court lacking

jurisdiction cannot render judgment but must dismiss the cause at any stage of the proceedings in which it becomes apparent that jurisdiction is lacking." *Siloam Springs Hotel, L.L.C. v. Century Sur. Co.*, 906 F.3d 926, 931 (10th Cir. 2018).

### Standard on Motion to Dismiss for Failure to State a Claim

On a Rule 12(b)(6) motion to dismiss, a court must accept as true all well-pleaded factual allegations in the complaint, *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009), but a complaint must also contain enough facts to state a claim for relief that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Although the sufficiency of a complaint generally rests on its contents alone, the court may also consider: (1) documents that the complaint incorporates by reference, (2) documents that the complaint references if they are central to the plaintiff's claims, and (3) matters of which a court may take judicial notice, which includes court records in any related court proceedings. *Gee v. Pacheco*, 627 F.3d 1178, 1186, 1191 (10th Cir. 2010). At the motion to dismiss stage, documents of which the court takes judicial notice "may only be considered to show their contents, not to prove the truth of matters asserted therein." *Tal v. Hogan*, 453 F.3d 1244, 1264 n.24 (10th Cir. 2006).

Although courts have traditionally construed *pro se* pleadings in a liberal fashion, this "does not relieve the plaintiff of the burden of alleging sufficient facts on which a recognized legal claim could be based." *Riddle v. Mondragon*, 83 F.3d 1197, 1202 (10th Cir. 1996). Similarly, courts do not assume the role of an advocate for the *pro se* litigant by constructing arguments or searching the record for potentially viable theories. *Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005). And a *pro se* litigant is expected to adhere to the same rules of procedure that govern any other litigant in this circuit. *Id.*

### *Qualified Immunity Standard*

Qualified immunity protects from civil liability government officials whose actions do not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Thomas v. Kaven*, 765 F.3d 1183, 1194 (10th Cir. 2014). When a defendant raises the qualified immunity defense, it creates a presumption that the defendant is immune from suit. *Janny v. Gamez*, 8 F.4th 883, 913 (10th Cir. 2021). Qualified immunity "is meant to give government officials a right, not merely to avoid standing trial, but also to avoid the burdens of such *pretrial* matters as discovery, as inquiries of this kind can be peculiarly disruptive of effective government." *Behrens v. Pelletier*, 516 U.S. 299, 308 (1996) (emphasis in original).

To overcome the presumption of immunity, the burden shifts to the plaintiff to show (1) the defendant's alleged conduct violated a federal statutory or constitutional right, and (2) that right was clearly established at the time of the alleged violation. *Janny*, 8 F.4th at 913. "The court has discretion to decide which of the two prongs of the qualified-immunity analysis to address first." *Grissom v. Roberts*, 902 F.3d 1162, 1167 (10th Cir. 2018) (citing *Pearson v. Callahan*, 555 U.S. 223, 236 (2009)). The clearly-established right must be clear from applicable case law, *Colbruno v. Kessler*, 928 F.3d 1155, 1161 (10th Cir. 2019), and must be defined with specificity, *City of Escondido v. Emmons*, 586 U.S. 38, 42 (2019).

### I. The Eleventh Amendment bars O'Quinn's federal claims against Defendants in their official capacities.

"The Eleventh Amendment bars suits in federal court against a nonconsenting state brought by the state's own citizens." *Williams v. Utah Dep't of Corr.*, 928 F.3d 1209, 1212 (10th Cir. 2019) (citing *Edelman v. Jordan*, 415 U.S. 651, 662-63 (1974)). State officials such as KDOC employees share the state's immunity from suits against them in their official capacities. *See id.; White v. Colorado*, 82 F.3d 364, 366 (10th Cir. 1996). A narrow exception allows a

plaintiff to seek prospective relief against a state official for ongoing violations of federal law. *Muscogee (Creek) Nation v. Pruitt*, 669 F.3d 1159, 1166 (10th Cir. 2012) (citing *Verizon Md. Inc. v. Pub. Serv. Comm'n*, 535 U.S. 635, 645 (2002)). But claims for "retrospective declaratory relief" are barred. *Meiners v. Univ. of Kan.*, 359 F.3d 1222, 1232 (10th Cir. 2004). "Once effectively asserted, Eleventh Amendment immunity constitutes a bar to the exercise of federal subject matter jurisdiction." *Williams*, 928 F.3d at 1212.

Here, O'Quinn requests only monetary damages in the form of nominal and compensatory damages (Doc. 46 at 6), which are barred by the Eleventh Amendment as asserted against Defendants in their official capacities. O'Quinn does not request prospective relief. Therefore, O'Quinn's federal claims against Defendants in their official capacities should be dismissed for lack of subject-matter jurisdiction due to Eleventh Amendment immunity.

## II. O'Quinn is not entitled to compensatory damages under the PLRA when he cannot show physical injury.

Under the PLRA:

No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury or the commission of a sexual act (as defined in section 2246 of title 18).

Prison Litigation Reform Act, 42 U.S.C. § 1997e(e); *see also Cox v. Malone*, 199 F. Supp. 2d 135, 139-40 (S.D.N.Y. 2002), *aff'd* 56 F. App'x 43, 44 (2d Cir. 2003) (holding that the bar on compensatory damages applies to conditions-of-confinement claims regardless of whether brought by a current or former inmate).[1] Here, O'Quinn has not alleged a physical injury or the commission of a sexual act, so he cannot receive damages for mental or emotional injury for his

---

[1] Regardless, O'Quinn was a "prisoner" for purposes of § 1997e at the time this action was "brought." The initial complaint says plainly that at the time of filing the action, O'Quinn "presently resides at Sedgwick County Detention Facility." (Doc. 1 at 1); *see also* § 1997e(h).

federal claims. So his federal claims for compensatory damages (Doc. 46 at 6; *see also* Doc. 1 at 6; Doc. 20 at 2; Doc. 22 at 2), should be dismissed for failure to state a claim. *See Searles v. Van Bebber*, 251 F.3d 869, 876 (10th Cir. 2001).

### III.   O'Quinn's § 1983 claims and any false-imprisonment claims are untimely and barred by the applicable statutes of limitations.

"[A]lthough a statute of limitations bar is an affirmative defense, it may be resolved on a Rule 12(b)(6) motion to dismiss when the dates given in the complaint make clear that the right sued upon has been extinguished." *Radloff-Francis v. Wyo. Med. Ctr., Inc.*, 524 F. App'x 411, 413 (10th Cir. 2013) (citing *Aldrich v. McCulloch Props., Inc.*, 627 F.2d 1036, 1041 n.4 (10th Cir. 1980)). The plaintiff then "has the burden of establishing a factual basis for tolling the statute." *Aldrich*, 627 F.2d at 1041 n.4.

Here, O'Quinn asserts that he was held in prison longer than he should have been. His Complaint refers to being in KDOC custody from 2017 to at least 2019. (Doc. 46 at 2.) The court can take judicial notice of the location history for O'Quinn in the Kansas Adult Supervised Population Electronic Repository (KASPER) report contained in Exhibit A. *United States v. Basher*, 629 F.3d 1161, 1165 & n.2 (9th Cir. 2011) (citing *Demis v. Sniezek*, 558 F.3d 508, 513 n.2 (6th Cir. 2009) and *United States v. Montgomery*, 550 F.3d 1229, 1231 n.1 (10th Cir. 2008)); *see also Gee v. Pacheco*, 627 F.3d 1178, 1186 (10th Cir. 2010) (holding the court can properly consider under Rule 12(b)(6) "matters of which a court may take judicial notice"). According to that location history, O'Quinn was released from KDOC custody on March 10, 2020, for "In-State Post Release." (Exhibit A at 4.)

The Kansas Court of Appeals ruled on October 16, 2020, that O'Quinn's jail time credit should be applied differently. *O'Quinn v. State*, 473 P.3d 385 (table opinion), 2020 WL 6108419, at *4 (Kan. Ct. App. Oct. 16, 2020); *see also Gee*, 627 F.3d at 1191 (saying the court

can take judicial notice of court records in any related court proceedings). Then the state district court issued an order on November 30, 2020, for KDOC to apply O'Quinn's jail time credit in accordance with the Kansas Court of Appeal's decision. (Doc. 19-1 at 39); *see also Gee*, 627 F.3d at 1191. O'Quinn's initial complaint was filed on May 4, 2023. (Doc. 1.)

**A. O'Quinn's § 1983 claims are untimely under the applicable two-year statute of limitations.**

For § 1983 claims, the forum state's statute of limitations for personal injury actions applies. *Jenkins v. Chance*, 762 F. App'x 450, 454 (10th Cir. 2019) (citing *Owens v. Okure*, 488 U.S. 235, 240-41 (1989)). If the forum state has multiple statutes of limitations for personal injury actions, the general or residual statute of limitations for personal injury actions applies. *Id.* (citing *Owens*, 488 U.S. at 249-50). In Kansas, the two-year statute of limitations under K.S.A. 60-513(a)(4) applies to § 1983 claims. *M.A.C. v. Gildner*, 853 F. App'x 207, 209 (10th Cir. 2021) (citing *Hamilton v. City of Overland Park*, 730 F.2d 613, 614 (10th Cir. 1984) (en banc)). Accrual of the federal action – and thus when the limitations period begins to run – is controlled by federal law. *Mondragón v. Thompson*, 519 F.3d 1078, 1082 (10th Cir. 2008). Accrual occurs upon knowledge (or constructive knowledge) of the injury. *Price v. Philpot*, 420 F.3d 1158, 1162 (10th Cir. 2005).

Here, O'Quinn brings § 1983 claims, so the two-year statute of limitations from K.S.A. 60-513(a)(4) applies. O'Quinn would have had knowledge or constructive knowledge of his alleged injuries from the Kansas court decisions on October 16, 2020, and November 30, 2020, which directed KDOC to apply his jail time credit differently. So the latest the § 1983 claims would have accrued is November 30, 2020. Over two years passed from that date before O'Quinn filed his initial complaint on May 4, 2023. So, unless the statute of limitations was sufficiently tolled, O'Quinn's § 1983 claims are barred by the two-year statute of limitations.

**B.  Any false-imprisonment claim is untimely under the applicable one-year statute of limitations.**

Under Kansas law, a one-year statute of limitations applies to false-imprisonment claims under K.S.A. 60-514(b). The statute of limitations for false imprisonment begins to run when the tortious conduct ends. *See EEOC v. Mico Oil Co.*, No. 87-2471-0, 1988 WL 139481, at *3 (D. Kan. Dec. 27, 1988). This statute of limitations "does not contain a discovery rule, and there is no authority that a cause of action governed by [the] statute does not accrue until discovered." *Cooper v. Home Depot*, No. 11-1006, 2011 WL 2470357, at *5 (D. Kan. June 20, 2011); *see also Kelly v. VinZant*, 287 Kan. 509, 528 (2008) (holding that a claim for battery, which is also governed by K.S.A. 60-514(b), accrues at the time of a touching even if fraud used to induce consent was not immediately discovered because "[t]he legislature has not provided an exception to or stated any circumstances extending the statute of limitations for battery based upon concealment of fraud or an inability to discover the battery").

Here, O'Quinn brings a "wrongful incarceration" claim. If this is interpreted as a false-imprisonment claim, the one-year statute of limitations from K.S.A. 60-514(b) applies. The latest day O'Quinn could have been falsely imprisoned would have been the day he was released from custody, which occurred on March 10, 2020. So that date would be when Defendants, if involved, would have ended their allegedly tortious conduct. *See Mico Oil*, 1988 WL 139481, at *3. Over three years passed from that date before O'Quinn filed his initial complaint on May 4, 2023. Therefore, unless the statute of limitations was sufficiently tolled, any state-law false-imprisonment claims are barred by the one-year statute of limitations.

**C.  O'Quinn has not alleged a valid basis to toll sufficiently the statutes of limitations.**

O'Quinn has not asserted any basis for tolling the statutes of limitations. Even if the court considers any tolling due to the COVID-19 pandemic, any such tolling would be insufficient to

make this action timely. The Kansas Supreme Court issued administrative orders during the COVID-19 pandemic under authority granted by K.S.A. 20-172 that tolled limitations periods and statutory deadlines between March 19, 2020 and April 15, 2021. *Centrinex, LLC v. Darkstar Grp., LTC*, No. 12-2300-EFM, 2022 WL 16833759, at *4 & n.26 (D. Kan. Nov. 9, 2022). As stated above, the latest the § 1983 claims would have accrued is November 30, 2020. Because this was during the period of tolling for COVID-19, the two-year statute of limitations for the § 1983 claims would not have begun to run until April 15, 2021, when the period of tolling for COVID-19 ended. *See* K.S.A. 20-172(d)(2). The statute of limitations would have finished running for the § 1983 claims on April 15, 2023. O'Quinn filed his initial complaint after that date, on May 4, 2023.

And, as stated above, the latest a state-law false-imprisonment claim would have accrued is March 10, 2020. The one-year statute of limitations for the false-imprisonment claim would have begun to run on that day. Between then and March 19, 2020, when the tolling period for COVID-19 began, nine days would have passed. Then the statute of limitations would have resumed April 15, 2021. *See* K.S.A. 20-172(d)(1). The statute of limitations would have finished running for the state-law false-imprisonment claim on April 6, 2022. O'Quinn filed his initial complaint over a year after this date, on May 4, 2023.

Therefore, even considering any tolling due to the COVID-19 pandemic, O'Quinn's § 1983 claims and any false-imprisonment claims are untimely and barred by the applicable statutes of limitations.

## IV.   Defendants are entitled to dismissal of O'Quinn's § 1983 claims because O'Quinn fails to state the requisite personal participation of any of the Defendants.

"Liability under § 1983 requires personal participation in the unlawful acts." *Beedle v. Wilson*, 422 F.3d 1059, 1072 (10th Cir. 2005). "Section 1983 does not authorize liability under a

theory of respondeat superior." *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 767 (10th Cir. 2013). Rather, a plaintiff must show an "affirmative link" between a defendant's actions and their alleged constitutional injury. *Id.* To demonstrate the affirmative link, a plaintiff must show: (1) personal involvement; (2) sufficient causal connection; and (3) culpable state of mind. *Id.*

### A. O'Quinn fails to allege personal participation by Hrabe.

Here, Hrabe cannot be liable under O'Quinn's claims because he was not personally involved in O'Quinn's alleged injury. Aside from the Complaint naming Hrabe in the caption and describing him as the acting warden of Norton Correctional Facility (NCF) (Doc. 46 at 1), the Complaint says only that Hrabe "was personally served with a writ where plaintiff received favorable termination to no avail eg. 'Official Capacity' Injunction. The writ executed against the defendants directed release from the Illegal restraint to no avail." (Doc. 46 at 4.) The Court can take judicial notice of state court records from the underlying court proceeding, which show that relief related to O'Quinn's petition for a writ of habeas corpus was not ordered until after October 16, 2020. *O'Quinn v. State*, 473 P.3d 385 (table opinion), 2020 WL 6108419, at *4 (Kan. Ct. App. Oct. 16, 2020); (Doc. 19-1 at 37-39 (relief ordered by the state district court on Nov. 30, 2020)); *see also Gee v. Pacheco*, 627 F.3d 1178, 1186, 1191 (10th Cir. 2010) (holding the court can properly consider under Rule 12(b)(6) "matters of which a court may take judicial notice" including court records from related proceedings). The court can also take judicial notice of the location history for O'Quinn in the Kansas Adult Supervised Population Electronic Repository (KASPER) report contained in Exhibit A. *United States v. Basher*, 629 F.3d 1161, 1165 & n.2 (9th Cir. 2011) (citing *Demis v. Sniezek*, 558 F.3d 508, 513 n.2 (6th Cir. 2009) and *United States v. Montgomery*, 550 F.3d 1229, 1231 n.1 (10th Cir. 2008)). According to that

10

location history, O'Quinn was released from KDOC custody on March 10, 2020, for "In-State Post Release." (Exhibit A at 4.) Therefore, O'Quinn cannot plausibly be alleging that Hrabe failed to release him from custody after relief was ordered in the state habeas case because O'Quinn had already been released. So O'Quinn must be merely alleging that Hrabe was served with process at the beginning of the state-court habeas case.[2] But a warden does not violate an inmate's constitutional rights simply by being served in a civil lawsuit and not granting the inmate his requested relief prior to resolution of that lawsuit. At the very least, it was not clearly established that those circumstances could constitute a violation.

In summary, O'Quinn alleges only that Hrabe was the warden of NCF and that Hrabe was served in a state-court habeas action. O'Quinn does not allege that Hrabe acted in a way that made him personally involved in O'Quinn's injury, in a way that made him cause O'Quinn's injury, or with a culpable state of mind. Therefore, the claims against Hrabe should be dismissed because O'Quinn fails to state a claim against Hrabe due to lack of personal participation in O'Quinn's injury. Alternatively, the claim should be dismissed due to qualified immunity because it was not clearly established that any alleged actions by Hrabe constituted a violation.

**B.  O'Quinn fails to allege personal participation by Sullivan and Keating.**

Sullivan and Keating also cannot be liable under O'Quinn's claims because they were not personally involved in O'Quinn's alleged injury either. The Complaint names Sullivan in the caption and describes her as the corrections manager for KDOC's sentence computation unit. (Doc. 46 at 1-2.) The Complaint names Keating in the caption and describes him as an acting

---

[2] Defendants understand O'Quinn's Complaint as referring to the state-court habeas case. If O'Quinn is alleging something else, then he has failed to meet the notice pleading standard. If the Court is not convinced that O'Quinn is referring to the state-court habeas case, then Defendants move in the alternative for a more definite statement under Federal Rule of Civil Procedure 12(e) to clarify the matter if necessary.

member of the Kansas Prisoner Review Board. (Doc. 46 at 1, 3.) O'Quinn alleges in a conclusory manner that it was Sullivan's and Keating's "duty to honor the writ where the plaintiff received favorable termination to no avail. 'Official Capacity' Injunction. The writ executed against the defendants directed release from the Illegal restraint to no avail." (Doc. 46 at 4-5.) But Sullivan and Keating were not even defendants in the habeas action. *See O'Quinn v. State*, 2020 WL 6108419 (caption); (Doc. 19-1 at 38 (caption)). Accordingly, O'Quinn never alleges they were "personally served" in that lawsuit like he alleges for Hrabe. (*See* Doc. 46 at 4.) And even if they had been, O'Quinn fails to allege personal participation by them for the same reasons as he failed to allege personal participation by Hrabe. Corrections employees would not violate an inmate's constitutional rights simply by being served in a civil lawsuit and not granting the inmate his requested relief prior to resolution of that lawsuit. At the very least, it was not clearly established that those circumstances could constitute a violation.

So O'Quinn alleges only that Sullivan and Keating were employed by KDOC and that a state-court habeas action had commenced to which they were not defendants. O'Quinn does not allege that Sullivan or Keating acted in a way that made them personally involved in O'Quinn's injury, in a way that made them cause O'Quinn's injury, or with a culpable state of mind. Therefore, the claims against Sullivan and Keating should be dismissed because O'Quinn fails to state a claim against them due to lack of personal participation in O'Quinn's injury. Alternatively, the claims should be dismissed due to qualified immunity because it was not clearly established that any alleged actions by Sullivan or Keating constituted a violation.

**V.**     **<u>Defendants are entitled to dismissal of any unjust-imprisonment claims under 28 U.S.C. §§ 1495 and 2513 because it only applies to federal criminal penalties.</u>**

Because O'Quinn does not specify the legal basis for his "wrongful incarceration" claim, Defendants address it in this motion as if it might bring claims under federal statutes (28 U.S.C.

§§ 1495, 2513), state statutes (K.S.A. 60-5004), and state common-law false imprisonment. 28 U.S.C. § 1495 reads as follows:

> The United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim for damages by any person unjustly convicted of an offense against the United States and imprisoned.

This statute has a companion statute, 28 U.S.C. § 2513, which applies only to claims "under section 1495." 28 U.S.C. § 2513. As stated in § 1495, these statutes apply only to persons "convicted of an offense against the United States and imprisoned." That means these statutes only apply to imprisonment based on *federal* criminal offenses. *See Taylor v. Colburn*, No. 23-3155-JWL, 2023 WL 8697812, at *3 n.1 (D. Kan. Dec. 15, 2023) (holding that these federal statutes do not apply to claims based on "state court criminal proceedings").

Here, if O'Quinn's "wrongful incarceration" claim is interpreted as a claim under 28 U.S.C. §§ 1495 and 2513, then it fails to state a claim because O'Quinn does not allege he was imprisoned based on a federal criminal offense. Therefore, Defendants are entitled to dismissal of any unjust-imprisonment claims under 28 U.S.C. §§ 1495 and 2513 for failure to state a claim.

## VI.    Defendants are entitled to dismissal of any wrongful-imprisonment claims under K.S.A. 60-5004 because it only applies when a conviction is reversed or vacated and it requires factual innocence.

Because O'Quinn does not specify the legal basis for his "wrongful incarceration" claim, Defendants address it in this motion as if it might bring claims under federal statutes (28 U.S.C. §§ 1495, 2513), state statutes (K.S.A. 60-5004), and state common-law false imprisonment. To bring a claim for wrongful imprisonment under K.S.A. 60-5004, a claimant must be "a person convicted and subsequently imprisoned for one or more crimes that such person did not commit." K.S.A. 60-5004(a). The claim has the following additional elements:

(A) The claimant was convicted of a felony crime and subsequently imprisoned;

(B) the claimant's judgment of conviction was reversed or vacated and either the charges were dismissed or on retrial the claimant was found to be not guilty;

(C) the claimant did not commit the crime or crimes for which the claimant was convicted and was not an accessory or accomplice to the acts that were the basis of the conviction and resulted in a reversal or vacation of the judgment of conviction, dismissal of the charges or finding of not guilty on retrial; and

(D) the claimant did not commit or suborn perjury, fabricate evidence, or by the claimant's own conduct cause or bring about the conviction. Neither a confession nor admission later found to be false or a guilty plea shall constitute committing or suborning perjury, fabricating evidence or causing or bringing about the conviction under this subsection.

K.S.A. 60-5004(c)(1).

Here, O'Quinn does not allege element B because he does not allege that his judgment of conviction was reversed or vacated. Not only was his *conviction* not altered, his *sentence* was not even altered. The court only ordered a change to how his *sentence* was *calculated*. He also fails to allege the second part of element B, that the charges against him were dismissed or that on retrial he was found to be not guilty. *See In re Sims*, 318 Kan. 153, 159-61, Syl. ¶¶ 1-2 (Kan. 2024) (interpreting element B).

Additionally, O'Quinn does not qualify as a "claimant" to bring a claim under the statute because he does not allege that he did not commit the crimes for which he was convicted. K.S.A. 60-5004(a); *see also Hall v. Dahl*, No. 21-3086-SAC, 2021 WL 3144644, at *2 n.1 (D. Kan. July 26, 2021) (citing K.S.A. 60-5004(a)) (saying that a claim is not brought under K.S.A. 60-5004 unless the plaintiff alleges a wrongful conviction because they did not commit the crimes). This also means O'Quinn does not allege the first part of element C. Further, under the second part of element C, actual innocence must be the grounds that "resulted in a reversal or vacation of the judgment of conviction, dismissal of the charges or finding of not guilty on retrial." And the Kansas Supreme Court recently held that under element D "the claimant must show factual

14

innocence from the charges giving rise to criminal liability before receiving compensation." *In re Spangler*, 547 P.3d 516, 522 (Kan. 2024). O'Quinn has not. Therefore, because O'Quinn does not qualify as a claimant and because he has not plausibly alleged facts to meet the elements of the claim, any wrongful-imprisonment claims under K.S.A. 60-5004 should be dismissed for failure to state a claim.

**VII.**   **The Court should decline to exercise supplemental jurisdiction over remaining state-law claims given the absence of a sufficient federal claim.**

"When all federal claims have been dismissed, the court may, and usually should, decline to exercise jurisdiction over any remaining state claims." *Koch v. City of Del City*, 660 F.3d 1228, 1248 (10th Cir. 2011). Here, all federal claims should be dismissed for the reasons above, and the court should decline to exercise jurisdiction over any remaining state claims.

## CONCLUSION

For these reasons, Defendants request that the Court dismiss O'Quinn's claims against them for lack of subject-matter jurisdiction or, alternatively, for failure to state a claim in light of qualified immunity. It was not clearly established that any alleged actions constituted a violation.

Respectfully submitted,

KRIS W. KOBACH
ATTORNEY GENERAL OF KANSAS

*/s/ Matthew L. Shoger*
Matthew L. Shoger, KS No. 28151
Assistant Attorney General
Office of the Attorney General
120 SW 10th Avenue, 2nd Floor
Topeka, Kansas 66612-1597
matt.shoger@ag.ks.gov
785-296-2215
Fax: (785) 291-3767
*Attorney for Defendants*

## <u>CERTIFICATE OF SERVICE</u>

       I hereby certify that on this 18th day of June, 2024, the foregoing document was filed with the clerk of the court by using the CM/ECF system, which will send notice of electronic filing to the following:

      Natasha Carter
      Kansas Department of Corrections
      714 SW Jackson, Suite 300
      Topeka, KS 66603
      Natasha.Carter@ks.gov
      *Attorney for Kansas Department of Corrections, Interested Party*

      Robert E. Wasinger
      Kansas Department of Corrections - Ellsworth
      P.O. Box 107
      Ellsworth, KS 67439
      Bob.Wasinger@ks.gov
      *Attorney for Kansas Department of Corrections, Interested Party*

I also certify that a copy of the above will be served by means of first-class mail, postage prepaid, addressed to:

      Justin Tyler O'Quinn, #104815
      Winfield Correctional Facility
      1806 Pinecrest Circle
      Winfield, KS 67156
      *Plaintiff, pro se*

                              */s/ Matthew L. Shoger*
                              Matthew L. Shoger
                              Assistant Attorney General