**In the United States District Court
for the District of Kansas**

_____

Case No. 23-cv-03117-TC

_____

JUSTIN TYLER O'QUINN,

*Plaintiff*

v.

LAURA KELLY, ET AL.,

*Defendants*

_____

**ORDER**

Justin O'Quinn, proceeding pro se, sued three correctional officers after his 365-day jail credit was incorrectly applied to his term of supervised release instead of his term of incarceration. Doc. 46. The defendants—Joel Hrabe, Michelle Sullivan, and Mark Keating—moved to dismiss. Doc. 48. For the following reasons, their motion is granted.

**I**

**A**

Each ground on which Defendants seek dismissal, one for lack of subject-matter jurisdiction and one for the failure to state a plausible claim, has a different standard that governs its resolution. And O'Quinn's pleadings are subject to certain standards that apply only to pro se plaintiffs. The following describes each applicable standard.

**1.** The Defendants, invoking the Eleventh Amendment, assert that there is no subject-matter jurisdiction over O'Quinn's official-capacity constitutional claims. A party may move to dismiss for lack of jurisdiction under Fed. R. Civ. P. 12(b)(1). There are, generally speaking, two ways to challenge subject-matter jurisdiction, one being facial and the other being factual. *Laufer v. Looper*, 22 F.4th 871, 875 (10th Cir. 2022). A facial challenge accepts the facts in the complaint as true but argues they fail to state a basis for jurisdiction, while a factual attack contests

1

the validity of jurisdictional facts. *Id.* Either way, "[t]he objection that a federal court lacks subject-matter jurisdiction . . . may be raised . . . at any stage in the litigation." *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 506 (2006) (citing Fed. R. Civ. P. 12(b)(1) and 12(h)(3)). An objection to a lawsuit based on a state's sovereign immunity is an objection that a federal court lacks subject-matter jurisdiction. *See Williams v. Utah Dep't of Corr.*, 928 F.3d 1209, 1214 (10th Cir. 2019); U.S. Const. amend. XI. Jurisdictional questions may be entwined with the merits of a case. If they are, then a court must convert a putative Rule 12(b)(1) motion into a Rule 12(b)(6) motion or a motion for summary judgment. *Kerr v. Polis*, 20 F.4th 686, 700 (10th Cir. 2021).

**2.** Defendants move to dismiss the rest of O'Quinn's claims under Rule 12(b)(6). A federal district court may grant a motion to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss for failure to state a claim, the complaint need only contain "a short and plain statement . . . showing that the pleader is entitled to relief" from each named defendant. Fed. R. Civ. P. 8(a)(2); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Two "working principles" underlie this standard. *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). First, a court ignores legal conclusions, labels, and any formulaic recitation of the elements. *Penn Gaming*, 656 F.3d at 1214. Second, a court accepts as true all remaining allegations and logical inferences and asks whether the claimant has alleged facts that make his or her claim plausible. *Id.*

A claim need not be probable to be considered plausible. *Iqbal*, 556 U.S. at 678. But the facts, viewed in the light most favorable to the claimant, must move the claim from conceivable to plausible. *Id.* at 678–80. The "mere metaphysical possibility that some plaintiff could prove some set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for these claims." *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007).

Plausibility is context specific. The requisite showing depends on the claims alleged, and the inquiry usually starts with determining what the plaintiff must prove at trial. *See Comcast Corp. v. Nat'l Assoc. of African Am.-Owned Media*, 589 U.S. 327, 332 (2020). In other words, the nature and complexity of the claim(s) define what plaintiffs must plead. *Cf. Robbins v. Oklahoma*, 519 F.3d 1242, 1248–49 (10th Cir. 2008) (comparing the factual allegations required to show a plausible personal injury claim versus a plausible constitutional violation).

**3.** These rules do not operate in a vacuum. When a plaintiff, such as O'Quinn, proceeds pro se, a court must construe his or her pleadings generously. *See Smith v. United States*, 561 F.3d 1090, 1096 (10th Cir. 2009). That generosity means a court should overlook the failure to properly cite legal authority, confusion of various legal theories, and apparent unfamiliarity with pleading requirements. *Id.* But it does not permit a court to construct legal theories on the plaintiff's behalf or assume facts not plead. *See id.*; *Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005).

And because O'Quinn filed his lawsuit pro se while incarcerated, an additional pleading standard applies. Ordinarily, a motion to dismiss is decided on the basis of the pleadings alone. *See Swoboda v. Dubach*, 992 F.2d 286, 290 (10th Cir. 1993); *Routt v. Howry*, 835 F. App'x 379, 380 n.2 (10th Cir. 2020). But "[w]hen the pro se plaintiff is a prisoner, a court authorized investigation and report by prison officials (referred to as a *Martinez* Report) […] may be necessary to develop a record sufficient to ascertain whether there are any factual or legal bases for the prisoner's claims." *Hall v. Bellmon*, 935 F.2d 1106, 1109 (10th Cir. 1991) (referring to a report prepared consistent with *Martinez v. Aaron*, 570 F.2d 317, 318–19 (10th Cir. 1978)).

Usage of the information at the motion to dismiss stage depends on the plaintiff's allegations. Generally speaking, a district court reviewing a 12(b)(6) motion may not use a *Martinez* Report to refute facts pled by the plaintiff or otherwise resolve factual disputes. *Gee v. Pacheco*, 627 F.3d 1178, 1186 (10th Cir. 2010); *Winkel v. Hammond*, 704 F. App'x 735 (10th Cir. 2017) (reversing a district court for dismissing a detainee's claim on a 12(b)(6) because it relied on contested facts from the *Martinez* Report). But a district court may use uncontroverted facts from a *Martinez* Report to dismiss a claim. *Gallagher v. Shelton*, 587 F.3d 1063, n.7 (10th Cir. 2009). A fact is uncontroverted if the plaintiff fails to provide information that would contest that particular fact. *Nickelberry v. Pharaoh*, 221 F.3d 1352 (10th Cir. 2000); *cf. Hall v. Bellmon*, 935 F.2d 1106, 1109 (10th Cir. 1991) ("A bona fide factual dispute exists even when the plaintiff's factual allegations that are in conflict with the *Martinez* [R]eport are less specific or well-documented than those contained in the report.").

3

**B**

In 2012, Justin O'Quinn was convicted of aggravated indecent solicitation of a child in Sedgwick County District Court. Doc. 19 at ¶ 1.[1] He was sentenced to a 32-month term of imprisonment, to be followed by a lifetime term of supervised release. *Id.* at ¶ 2. He completed his term of imprisonment on June 26, 2015, and then began to serve his lifetime term of supervised release. *Id.* While O'Quinn was on release, he was arrested for failing to register as a criminal offender. *Id.* at ¶ 3. O'Quinn spent one year in jail before he was sentenced to a 24-month term of imprisonment for his failure-to-register offense. *Id.* That detention lasted from February 2, 2016, until February 1, 2017. *Id.* at ¶ 4. After O'Quinn was sentenced, he was also penalized in his original indecent-solicitation case for committing a crime while serving a term of supervised release. *Id.* at ¶ 7. Specifically, the Prisoner Review Board revoked his supervised release until April 2018. *Id.*

Under Kansas law, O'Quinn was entitled to credit the year he spent in jail to one of his two sentences. Doc. 19 at ¶ 3. The Kansas Department of Corrections applied O'Quinn's jail credit to his term of supervised release in his original indecent-solicitation case rather than his new 24-month term of imprisonment for his failure to register. *Id.* at ¶ 4. On June 6, 2019, O'Quinn filed a petition in Norton County District Court, arguing that his jail credit was applied to the incorrect sentence. *See O'Quinn v. State of Kansas (O'Quinn I)*, No. 2019-CV-20

---

[1] All references to the parties' briefs are to the page numbers assigned by CM/ECF.

(Norton Cnty. Dist. Ct. Oct. 25, 2019).[2] He requested that his release date be recalculated, which would have allowed him to complete his term of imprisonment one year earlier. *Id.* at 2–3.

Much litigation followed. *See generally* Doc. 19. But ultimately, the Kansas Court of Appeals agreed with O'Quinn and held that his 365-day jail credit should have been applied to his 24-month term of imprisonment because he spent the year in jail before his term of supervision was revoked. *O'Quinn v. State of Kansas (O'Quinn II)*, No. 122,236, 2020 WL 6108419, at *4 (Kan. Ct. App. Oct. 16, 2020). The Kansas Court of Appeals issued its ruling on October 16, 2020. *See id.* On remand, the Norton County District Court ordered the Kansas Department of Corrections to reapply O'Quinn's jail credit to the proper sentence. *See O'Quinn v. State of Kansas (O'Quinn III)*, No. 2019-CV-20, at *2 (Norton Cnty. Dist. Ct. Nov. 30, 2020). By that time, O'Quinn had been released from his term of imprisonment, which ended on March 10, 2020. Doc. 19-1 at 3. O'Quinn has not alleged when he would have been released from custody had the Kansas Department of Corrections correctly applied his jail credits in the first instance. *See* Doc. 16 (explaining that it is unclear whether O'Quinn "received credit toward a valid and lawful sentence for any time he allegedly overserved").

On May 4, 2023, O'Quinn filed the current lawsuit seeking monetary relief as compensation for the extra time he spent in jail. Docs. 1 & 46. Some Defendants have been dismissed, Doc. 22, and O'Quinn added others in his Amended Complaint, Doc. 46. Currently, three

---

[2] Ordinarily, a motion to dismiss is decided on the basis of the pleadings alone. *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009). But a "district court may consider documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity." *Alvarado v. KOB-TV, L.L.C.*, 493 F.3d 1210, 1215 (10th Cir. 2007) (citation and internal quotation marks omitted); *Waller v. City & Cnty. of Denver*, 932 F.3d 1277, 1282 (10th Cir. 2019). O'Quinn's claims center around the Defendants' alleged failure to correctly apply his 365-day jail credit after the Kansas Court of Appeals held that it was incorrectly applied in the first instance. *See* Doc. 46 at 4–5. The records from O'Quinn's state case are central to his claims, referenced in his Complaint, Doc. 46 at 4–5, and Defendants' do not dispute the documents' authenticity, Doc. 48 at 6–7 (seeking judicial notice of the same court documents that O'Quinn references). As a result, they may be considered when deciding the Defendants' motion to dismiss. *See City of Philadelphia v. Fleming Cos., Inc.*, 264 F.3d 1245, 1251 n.4 (10th Cir. 2001) (considering judicial records from related proceedings that the plaintiff referenced in the complaint and were central to the plaintiff's claims).

Defendants remain. The first is Joel Hrabe, the Warden of Norton Correctional Facility, where O'Quinn was detained. *Id.* at 1. The second is Michelle Sullivan, who is the Corrections Manager for the Kansas Department of Corrections Sentence Computation Unit. *Id.* at 2. And the third is Mark Keating, who was an acting member of the Kansas Prisoner Review Board during the times relevant to O'Quinn's claims. *Id.* at 3. There are no additional allegations that would describe involvement these Defendants had in calculating and/or applying O'Quinn's 365-day jail credit to his sentence, or what their relationship is with O'Quinn.

O'Quinn has two claims against these Defendants and seeks both fifteen million dollars in compensatory damages and an award of nominal damages. Doc. 46 at 4–6. In his first claim, O'Quinn alleges that all three Defendants, in their individual and official capacities, violated his constitutional right to be free of cruel and unusual punishment. *Id.* The second alleges that O'Quinn was wrongfully incarcerated, but he does not assert a common-law or statutory basis for his claim. *Id.* at 4. Defendants seek dismissal of all claims. Doc. 48.

## II

Subject-matter jurisdiction does not exist over O'Quinn's official-capacity constitutional claims. And the remaining claims fail to state a claim upon which relief can be granted. As a result, the Defendants' motion to dismiss is granted.

### A

O'Quinn brings his claims against Defendants in their individual and official capacities pursuant to 42 U.S.C. § 1983. That statute provides that "[e]very person who, under color of [state law,] subjects, or causes to be subjected, any citizen . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured." 42 U.S.C. § 1983. It creates no substantive rights but merely provides a mechanism for enforcing a right conferred by the Constitution or a federal statute. *Gonzaga Univ. v. Doe*, 536 U.S. 273, 285 (2002); *see also Health & Hosp. Corp. of Marion Cnty. v. Talevski*, 599 U.S. 166, 174–75 (2023).

There are meaningful differences between the two types of claims O'Quinn is asserting. Because these differences help explain the basis of the claim and the arguments for dismissal, it is helpful to explore those nuances. As to the official-capacity claims against the individual defendants, O'Quinn is really asserting a claim against the entity for

whom Defendants were employed. *Kentucky v. Graham*, 473 U.S. 159, 165 (1985) (applying *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978)); *accord Cox v. Glanz*, 800 F.3d 1231, 1254 (10th Cir. 2015). To establish liability against the entity, a plaintiff must allege that his or her harm was caused by a constitutional violation committed by the entity's agent, *Camuglia v. City of Albuquerque*, 448 F.3d 1214, 1223 (10th Cir. 2006), and that the entity's custom, policy, or practice caused the unconstitutional conduct, *Monell*, 436 U.S. at 694–95. *See generally Prince v. Sheriff of Carter Cnty.*, 28 F.4th 1033, 1048–49 (10th Cir. 2024). In contrast, an individual-capacity suit under Section 1983 holds a state actor personally liable for constitutional deprivations and "must be based on personal involvement in the alleged constitutional violation." *Brown v. Montoya*, 662 F.3d 1162, 1163 (10th Cir. 2011) (quoting *Foote v. Spiegel*, 118 F.3d 1416, 1423 (10th Cir. 1997)).

Defendants seek dismissal of both types of claims. They contend that O'Quinn's official-capacity claims are barred by the Eleventh Amendment. Doc. 48 at 4–5. They also assert that his individual-capacity claims fail to state a plausible claim for the relief he seeks. *Id.* at 5–7.

**1**

Defendants argue that the Eleventh Amendment bars O'Quinn's suits against them in their official capacities. Doc. 48 at 4. The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. But "sovereign immunity derives not from the Eleventh Amendment but from the structure of the original Constitution itself." *Alden v. Maine*, 527 U.S. 706, 728 (1999); *Hans v. Louisiana*, 134 U.S. 1, 15 (1890) ("The truth is that the cognizance of suits and actions unknown to the law, and forbidden by the law, was not contemplated by the constitution when establishing the judicial power of the United States."). The purpose of the amendment was therefore not to define the scope of the states' immunity; it was to codify "the traditional understanding of sovereign immunity" and clarify any constitutional provisions "that anyone had suggested might support a contrary understanding." *Alden*, 527 U.S. at 723.

Based on this historical context, the Supreme Court has "repeatedly held that the sovereign immunity enjoyed by the States extends beyond the literal text of the Eleventh Amendment." *Federal Mar. Comm'n v. South Carolina State Ports Auth.*, 535 U.S. 743, 754 (2002). So

not only are states immune from suits brought by citizens of other states or nations, they are also immune from federal claims in state court, *Alden*, 527 U.S. 706, suits by Indian tribes, *Blatchford v Native Vill. of Noatak*, 501 U.S. 75 (1991), suits by foreign nations, *Principality of Monaco v. Mississippi*, 292 U.S. 313 (1934), admiralty proceedings, *Ex parte New York*, 256 U.S. 490 (1921), suits by federal corporations, *Smith v. Reeves*, 178 U.S. 436 (1900), and suits by the state's own citizens, *Hans*, 134 U.S. 1. The immunity "applies regardless of whether a plaintiff seeks declaratory or injunctive relief, or money damages." *Steadfast Ins. Co. v. Agricultural Ins. Co.*, 507 F.3d 1250, 1252 (10th Cir. 2007). A state may, however, waive its sovereign immunity by voluntarily invoking federal jurisdiction or by making a "clear declaration" that it consents to suit in federal court. *Id.* at 1252–53.

In addition to claims against a state itself, sovereign immunity extends to governmental entities considered to be arms of the state. *Williams v. Utah Dep't of Corr.*, 928 F.3d 1209, 1212 (10th Cir. 2019). And it necessarily extends to the state's employees when they are sued for monetary damages in their official capacity.[3] *Colby v. Herrick*, 849 F.3d 1273, 1276 (10th Cir. 2017); *see also Wisdom Ministries, Inc. v. Garret*, No. 23-5098, 2024 WL 3770934, at *1 (10th Cir. Aug. 13, 2024) (explaining that Eleventh Amendment immunity for official-capacity claims extends to requests for nominal damages). Federal courts do not have subject-matter jurisdiction over claims barred by the Eleventh Amendment, so official-capacity claims against state officials seeking

---

[3] There is an exception to the general rule barring claims against state officials sued in their official capacities where the plaintiff seeks prospective injunctive relief to stop an ongoing violation of federal law. *Williams*, 928 F.3d at 1214 (citing *Ex Parte Young*, 209 U.S. 123, 159–60 (1908)). O'Quinn's request for relief only seeks monetary damages, but he refers to official-capacity injunctions in other parts of his Amended Complaint. *See* Doc. 46 at 4–5. Even if O'Quinn is seeking injunctive relief, the *Ex parte Young* exception does not apply because O'Quinn has not alleged any ongoing violation of federal law. *Calderon v. Kansas Dep't of Soc. & Rehab. Servs.*, 181 F.3d 1180, 1184 (10th Cir. 1999) (finding the Eleventh Amendment barred the plaintiff's official-capacity claims because the allegations "provided no indication that prospective injunctive relief would ameliorate the alleged violations, which had already occurred"); *see also Williams*, 928 F.3d at 1214–15 (holding that the plaintiff's request for prospective injunctive relief did not provide a basis to believe that any specific prison official could be enjoined from violating the plaintiff's federal rights in the future).

monetary relief must be dismissed without prejudice. *Williams*, 928 F.3d at 1214.

O'Quinn sued Defendants Hrabe, Sullivan, and Keating in their official capacities, seeking monetary damages. Doc. 46 at 1–6. All three Defendants work for the Kansas Department of Corrections. *Id.* at 1–3. The Kansas Department of Corrections, for Eleventh Amendment purposes, is an arm of the state. *Williams*, 928 F.3d at 1212 (finding the Utah Department of Corrections was an arm of the state of Utah where the plaintiff did not challenge the department's assertion); *accord Jones v. Courtney*, 466 F. App'x 696, 699 (10th Cir. 2012) ("In the first place, we have no trouble concluding that [the Kansas Department of Corrections] is an agency or department of the State of Kansas."). As a result, the Eleventh Amendment bars O'Quinn's official-capacity claims against these Defendants. *See Williams*, 928 F.3d at 1211–12 (finding the Eleventh Amendment precluded the plaintiffs' claims for damages against two officers in their official capacities on behalf of an arm of the state). This means that O'Quinn has not established that subject-matter jurisdiction exists over his official-capacity claims, so they are dismissed without prejudice. *Colby*, 849 F.3d at 1278.

**2**

O'Quinn also alleged that Defendants, in their individual capacities, violated his constitutional right to be free of cruel and unusual punishment under the Eighth and Fourteenth Amendments by incarcerating him for longer than they should have. Doc. 46 at 4 (referencing U.S. Const. amends. VIII, XIV). That claim fails for two independent reasons.

**1.** Defendants contend that a two-year statute of limitations applies to O'Quinn's constitutional claims. Doc. 48 at 7. Section 1983 lacks a statute of limitations of its own. *Hardin v. Straub*, 490 U.S. 536, 538–39 (1989). Instead, "[l]imitations periods in [Section] 1983 suits are to be determined by reference to the appropriate state statute of limitations." *Fogle v. Pierson*, 435 F.3d 1252, 1258 (10th Cir. 2006) (quoting *Hardin*, 490 U.S. at 539). In this context, that means the underlying state's statute of limitations for personal injury torts. *See Wallace v. Kato*, 549 U.S. 384, 387 (2007). Kansas has one, K.S.A. § 60-513, and it provides two years in which to sue, *Levy v. Kansas Dep't of Soc. & Rehab. Servs.*, 789 F.3d 1164, 1172 (10th Cir. 2015). Because O'Quinn filed suit on May

4, 2023, the Section 1983 claim is time barred unless it accrued no sooner than May 4, 2021.[4]

Accrual for a Section 1983 claim "is a question of federal law that is not resolved by reference to state law." *Wallace*, 549 U.S. at 388. And under federal law, a Section 1983 claim accrues when "the plaintiff can file suit and obtain relief." *Id.* (citation omitted); *see also Smith v. City of Enid*, 149 F.3d 1151, 1154 (10th Cir. 1998) (noting that Section 1983 claims alleging constitutional violations "accrue when the plaintiff knows or should know that his or her constitutional rights have been violated") (internal quotation marks omitted).

There are several dates on which O'Quinn's claim arguably could have accrued. For example, he first alleged in state court that his jail credits were incorrectly applied six years ago, on June 6, 2019, while he was still incarcerated for the offenses that gave rise to this case. *See Herrera v. City of Espanola*, 32 F.4th 980, 992 (10th Cir. 2022) (explaining that a Section 1983 claim accrues when a plaintiff knew or should have known about the constitutional injury). And O'Quinn certainly knew of any injuries related to the application of his jail credit when the Kansas Court of Appeals held that his jail credit was improperly applied on October 16, 2020, *O'Quinn II*, 2020 WL 6108419, at *4, and again when the Norton County District Court ordered the Kansas Department of Corrections to reapply his jail credit on November 30, 2020, *O'Quinn III*, No. 2019-CV-20, at *2, both of which occurred after he was released. *See McDonough v. Smith*, 588 U.S. 109, 118–19 (2019) (explaining that false arrest and false imprisonment claims may reach "a complete and present cause of action" later than when the plaintiff knew he or she was arrested or imprisoned); *Myers v. Koopman*, 738 F.3d 1190, 1194 (10th Cir. 2013) (stating that in the Fourth Amendment context, a false imprisonment claim "accrues when the alleged false imprisonment ends")

---

[4] The Defendants' statute-of-limitations argument is an affirmative defense. Fed. R. Civ. P. 8(c)(1). At the pleading stage, a plaintiff need not anticipate affirmative defenses to survive a motion to dismiss. *Fernandez v. Clean House, LLC*, 883 F.3d 1296, 1298–99 (10th Cir. 2018). It is appropriate, however, to dismiss a case based on a statute-of-limitations defense even at the pleading stage if "the dates given in the complaint make clear that the right sued upon has been extinguished." *Schell v. Chief Just. & Justs. of Okla. Sup. Ct.*, 11 F.4th 1178, 1191 (10th Cir. 2021) (quoting *Aldrich v. McCulloch Props., Inc.*, 627 F.2d 1036, 1041 n.4 (10th Cir. 1980)).

It is not necessary to identify the precise date of accrual because all of the possible dates are more than two years prior to the date he filed this action on May 4, 2023. Doc. 1. This means O'Quinn's Section 1983 claims against Defendants in their individual capacities must be dismissed as untimely.[5] *Brown v. Unified Sch. Dist. 501, Topeka Pub. Schs.*, 465 F.3d 1184, 1188 (10th Cir. 2006) (affirming dismissal of a civil rights action brought more than two years after the claim accrued under K.S.A. § 60-513(a)).

**2.** Not only is O'Quinn's action untimely, his Amended Complaint fails to state a plausible claim that any of the three Defendants could be held personally liable for participating in a constitutional violation. Construed liberally, the constitutional violation that O'Quinn alleges is a violation of his due-process liberty interest in credit for jail time served and/or the Eighth Amendment's prohibition on cruel and unusual punishment by serving time in prison after completing his sentence. *See Routt v. Howry*, 835 F. App'x 379, 382–83 (10th Cir. 2020) (collecting cases that generally describe these constitutional principles but explaining that binding authority has not directly addressed the constitutional magnitude of the failure to properly credit time served).

To state an individual-capacity claim under Section 1983, a complaint "must be based on personal involvement in the alleged constitutional violation." *Montoya*, 662 F.3d at 1163 (quoting *Spiegel*, 118 F.3d

---

[5] Although O'Quinn did not raise any argument related to the concept of equitable tolling, it is theoretically possible that such an argument could have been made. Section 1983 borrows state-law exceptions to statutes of limitation like equitable tolling if those exceptions are "not inconsistent with federal law." *Hardin*, 490 U.S. at538; *Alexander v. Oklahoma*, 382 F.3d 1206, 1217 n.5 (10th Cir. 2004). As Defendants note, the most likely tolling argument O'Quinn could have made is that the Kansas Supreme Court suspended all state statutes of limitation due to the COVID-19 pandemic from March 19, 2020, through April 15, 2021. Admin Order No. 2020-PR-32 (Kan. Apr. 3, 2020); Admin Order No. 2021-PR-20 (Kan. Mar. 30, 2021). Even if O'Quinn had made such an argument, it would fail because he filed this lawsuit on May 4, 2024, more than two years after the Kansas Supreme Court stopped suspending any statutory limitation periods. *See* Admin Order No. 2020-PR-32 (Kan. Apr. 3, 2020). *See Unified Sch. Dist. 501*, 465 F.3d at 1188 (finding Kansas's two-year statute of limitations barred civil rights complaints filed outside that period); *Vasquez Arroyo v. Starks*, 589 F.3d 1091, 1097 (10th Cir. 2009) (noting that a pro se prisoner's complaint may be dismissed on the basis of a statute-of-limitations defense if it is clear that the plaintiff will not have any meritorious tolling arguments).

at 1423). And, generally speaking, respondeat superior is insufficient to impose liability in a Section 1983 action, so a plaintiff cannot hold a state actor personally liable for a constitutional violation simply by alleging that the actor was the supervisor of individuals who personally participated in the violation. *Montoya*, 662 F.3d at 1164. Instead, a "plaintiff in a § 1983 action must allege that each defendant is subject to personal liability based on his own actions." *Cuervo v. Sorenson*, 112 F.4th 1307, 1314 (10th Cir. 2024).

O'Quinn fails to allege that any of the Defendants personally participated in conduct that would support a claim that they unconstitutionally incarcerated him beyond his release date. Instead, his allegations are generic and fail to tie any of the Defendants to any act, omission, decision, or deprivation. For instance, his allegations against each Defendant are materially identical in that they only allege where each Defendant lives, his or her role at the Kansas Department of Corrections, and that he or she "was personally served with a writ where plaintiff received favorable termination to no avail." *See* Doc. 46 at 4–5. O'Quinn appears to believe that the Defendants are liable for the alleged constitutional violation he claims to have suffered because they were named as defendants in the habeas action that O'Quinn brought in state court. That will not do.

The Amended Complaint contains no allegations suggesting that any of the Defendants were involved in applying O'Quinn's jail credit, calculating his release date, or reapplying the jail credit after the Kansas Court of Appeals held that it was improperly applied. In fact, the Amended Complaint does not include any facts to suggest that the Defendants even knew who O'Quinn was or that he was an inmate at Norton Correctional Facility when his jail credits were applied and his release date calculated. *Montoya*, 662 F.3d at 1165 (affirming dismissal of a complaint that did not specifically allege any conduct of the defendant "or even that he knew about" the alleged violation). Accordingly, O'Quinn has not stated facts that would give rise to the plausible inference that any of the three Defendants personally participated in the alleged violation.

**B**

O'Quinn also brings a claim for wrongful incarceration under what appears to be Kansas state law. Doc. 46 at 4. He did not identify the cause of action on which he relies, so his claim is charitably construed to invoke K.S.A. § 60-5004, which provides a civil remedy for individuals who were wrongfully convicted and imprisoned, and a common-

law false-incarceration tort claim.[6] *See Phillips v. Humble*, 587 F.3d 1267, 1270 (10th Cir. 2009) (explaining that a pro se plaintiff's complaint should be construed liberally to allege the federal and state claims that the facts support even if it does not specify a cause of action); *see also* Doc. 48 at 12–13 (construing O'Quinn's wrongful imprisonment claim).[7] O'Quinn's state-law claims are subject to dismissal for at least two reasons.[8]

O'Quinn's state-law wrongful imprisonment claims—like his federal claims—are untimely. In fact, an even shorter limitations period applies: A one-year statute of limitations applies to actions for false imprisonment in Kansas. Kan. Stat. Ann. § 60-514(b); *H.B. v. M.J.*, 508 P.3d 368, 377 (Kan. 2022). The general accrual rule under Kansas law is that a claim accrues "when the injuries manifest themselves." *H.B.*, 508 P.3d at 371. Like with O'Quinn's Section 1983 claims, it is unnecessary to determine which date, among those on which his injuries arguably could have manifested themselves, is the correct one because

---

[6] A federal court sitting in diversity or exercising supplemental jurisdiction over state-law claims applies the substantive law of the state in which it sits, as enacted by the state legislature and interpreted by the state's highest court. *Erie R. Co. v. Tompkins,* 304 U.S. 64, 78 (1938).

[7] The construction of O'Quinn's claim offered by Defendants under federal law is unlikely. They suggest that O'Quinn's claim could be construed as invoking the Federal Erroneous Convictions Act, 28 U.S.C. §§ 1495, 2513. Doc. 48 at 2. That statute confers jurisdiction on the United States Court of Federal Claims to adjudicate actions brought by individuals who were "unjustly convicted of an offense against the United States and imprisoned." 28 U.S.C. § 1495. O'Quinn did not file his lawsuit in the Court of Federal Claims, so it is unnecessary to construe his claim as one that federal district courts lack subject-matter jurisdiction to hear. *See Jackson v. United States*, 162 Fed. Cl. 282, 303 (Fed. Cl. 2022) (explaining that federal district courts lack jurisdiction to decide Section 1495 claims).

[8] It may have been simpler to decline the exercise of supplemental jurisdiction over O'Quinn's remaining claims having concluded the Section 1983 claims fail as a matter of law. *I Dig Texas, LLC v. Creager*, 98 F.4th 998, 1012 (10th Cir. 2024) (explaining that "district court[s] should normally dismiss supplemental state law claims after all federal claims have been dismissed, particularly when the federal claims are dismissed before trial"); *Brooks v. Gaenzle*, 614 F.3d 1213, 1230 (10th Cir. 2010) ("[N]otions of comity and federalism demand that a state court try its own lawsuits, absent compelling reasons to the contrary."). But given the aforementioned uncertainty about whether his claims are state or federal, the choice was made to address O'Quinn's state law claims on the merits.

his claim is untimely even when the latest possible date of accrual is used. *See supra* Part II.A.2.

**2.** And O'Quinn's state-law claims fail on the merits, too. Take his statutory claim first. To prevail, O'Quinn must ultimately prove that his "judgment of conviction was reversed or vacated and either the charges were dismissed or on retrial the claimant was found to be not guilty." Kan. Stat. Ann. § 60-5004(c)(1)(B); *Matter of Mashaney*, 557 P.3d 1231, 1234–35 (Kan. 2024) (holding that this element requires the judgment to be reversed or vacated, not simply amended, and that the charges must have been dismissed). In addition, O'Quinn would need to prove that he "did not commit the crime or crimes for which [he] was convicted." *Id.* § 60-5004(c)(1)(C); *Matter of Warsame*, 563 P.3d 1281, 1286 (Kan. 2025) (explaining that this element requires the claimant "to prove actual innocence by a preponderance of the evidence . . . and that this was the reason the charges were dismissed").

O'Quinn's Amended Complaint fails to make the necessary allegations. It does not, for example, allege that his conviction was reversed or vacated. *See Mashaney*, 557 P.3d at 1235 (reversing district court's judgment granting relief because Section 60-5004 requires a conviction to be reversed or vacated and the charges dismissed). It was not: The Kansas Court of Appeals merely held that the Kansas Department of Corrections should have applied his jail credits to his failure-to-register sentence rather than his original indecent-solicitation sentence. *O'Quinn II*, 2020 WL 6108419, at *4. Nor has he alleged that he was found to be innocent by a preponderance of the evidence of the crimes for which he was convicted. *See Warsame*, 563 P.3d at 1286 (denying relief under Section 60-5004 where the claimant did not show he was factually innocent of the conduct that led to his felony convictions). And it naturally follows that he has not alleged that his conviction was reversed because of his factual innocence. He only alleges that the Defendants failed to accurately apply his one-year jail credit to his term of incarceration. That is insufficient. *See Matter of Sprangler*, 547 P.3d 516, 523 (Kan. 2024) (holding that Section 60-5004 only permits a claimant to recover for wrongful imprisonment if the claimant shows factual innocence and expungement of the original convictions).

So, too, if O'Quinn's Amended Complaint is construed to assert a common-law false imprisonment claim. In Kansas, the tort of false imprisonment requires a plaintiff to show "that the defendant restrained his or her personal freedom without legal excuse by words, acts, threats, or personal violence which caused the plaintiff to be fearful of leaving." *Mader v. Custom Wood Prods., Inc.*, No. 123,124, 2021 WL 3439243, at *4 (Kan. Ct. App. 2021). In particular, the plaintiff must

14

prove that the defendants instigated, assisted, "or by some means directed, countenanced or encouraged" the imprisonment. *Thompson v. General Fin. Co.*, 468 P.2d 269, 280 (Kan. 1970).

Again, O'Quinn's Amended Complaint lacks the necessary allegations. There are no allegations any of the Defendants personally participated in restraining O'Quinn's personal freedom by words, acts, threats, or personal violence. Rather, he merely describes their job titles and that they knew that the Kansas Court of Appeals directed the Kansas Department of Corrections to reapply his jail credits consistent with its holding. O'Quinn did not allege that any of the Defendants instigated, assisted, or otherwise directed his confinement, the application of his jail credits, the calculation of his release date, or the reapplication of his jail credits after the Kansas Court of Appeals held that it was necessary to do so. As a result, O'Quinn cannot state a plausible common-law false imprisonment claim under Kansas law. *See Pyle v. Woods*, 874 F.3d 1257, 1266 (10th Cir. 2017) (affirming dismissal of a complaint that did not "contain factual allegations sufficient to support a plausible inference" that, if true, would satisfy the elements of the plaintiff's claim).

## III

For the foregoing reasons, Defendants' Motion to Dismiss, Doc. 48, is GRANTED.

It is so ordered.

Date: June 30, 2025        s/ Toby Crouse
                           Toby Crouse
                           United States District Judge